Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/17/2023 08:05 AM CDT

CYNTHIA A. PARDE, APPELLANT,
v. ARLAN D. PARDE, APPELLEE.

___ N.W.2d ___

Filed March 17, 2023.    No. S-21-497.

1. **Divorce: Child Custody: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Divorce: Property Division: Equity.** Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances.

5. **Divorce: Property Division.** In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties.

6. ____: ____. In a marital dissolution action, there is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

7. ____: ____. The appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.

8. **Divorce: Property Division: Presumptions.** Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.

9. **Divorce: Property Division.** Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

10. ____: ____. The original value of an asset may be nonmarital, while all or some portion of the appreciation of that asset may be marital.

11. ____: ____. In a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties.

12. **Divorce: Property Division: Real Estate.** Whether appreciation in real estate is active or passive depends on the facts and circumstances of each case.

13. **Divorce: Property Division: Proof.** The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income.

14. **Divorce: Property Division: Equity.** The equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property.

15. **Divorce: Property Division: Presumptions: Gifts.** Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital.

16. **Evidence: Appeal and Error.** When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

Petition for further review from the Court of Appeals, Moore, Riedmann, and Arterburn, Judges, on appeal thereto from the District Court for Gage County, Ricky a. Schreiner, Judge. Judgment of Court of Appeals affirmed as modified, and cause remanded with directions.

John W. Ballew, Jr., and Steven D. Burns, of Ballew Hazen, P.C., L.L.O., for appellant.

Terrance A. Poppe and McKynze P. Works, of Morrow, Poppe, Watermeier & Lonowski, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

We granted further review of a Nebraska Court of Appeals decision[1] applying the active appreciation rule to agricultural land in a marital property division. We agree that the rule applies to such land and that the owning spouse failed to show the appreciation in value of the land was not caused by the active efforts of either spouse. We affirm the decision of the Court of Appeals as modified and remand the cause with directions.

## II. BACKGROUND

Arlan D. Parde and Cynthia A. Parde (Cindy) married in April 1994. It was a second marriage for both parties. In January 2019, the parties separated and Cindy filed a complaint for dissolution of the marriage.

The district court conducted a trial in February 2021. The court received over 80 exhibits and heard the testimony of four witnesses: Cindy, Cindy's daughter, Arlan, and Arlan's sister. Our inquiry upon further review is focused on the nonmarital and marital portions of various parcels of agricultural land.

### 1. Farming Operation

The evidence established that both before and during the marriage, Arlan maintained a farming operation. Over the course of the parties' 26-year marriage, Arlan and Cindy both contributed to the farming operation.

---

[1] *Parde v. Parde*, 31 Neb. App. 263, 979 N.W.2d 788 (2022).

An agricultural balance sheet from January 1994 showed that Arlan had assets of $715,336, including land, and liabilities of $393,989. Several months after the marriage, Cindy signed a financing statement and security agreement obligating her for all of Arlan's bank loans. Throughout the marriage, the parties had one checking account which they used for the deposit of all proceeds from the sale of cattle, crops, machinery, and property disposed of during the marriage. They paid farming operation expenses from the checking account.

On a balance sheet near the date of separation, the parties listed their net worth as approximately $1.6 million. With updated real estate values, their net worth was over $2 million. When Arlan's counsel asked if the increase in wealth from $400,000 to about $2 million came from anywhere aside "from the land, the dairy, the farm operation, the things that not only [he] had before the marriage but the two of [them] worked at during the marriage," Arlan added that he started "trucking." Arlan did not provide any additional testimony regarding the increased value or appreciation in value of the land or farming operation.

## 2. PARCELS OF PROPERTY

The dispute centers on the marital portion of five properties. We set forth the evidence related to each parcel.

### (a) Fertilizer Plant

Prior to the marriage, Arlan bought the land called Fertilizer Plant, consisting of approximately 113 acres of dry cropland, for $90,720. At the time of the parties' marriage, Fertilizer Plant was worth approximately $70,000. Arlan testified that he "paid off" this property prior to the marriage, but Cindy testified that they eliminated the debt during the marriage. Arlan sold 19 acres between 1993 and 2000. The money from the sales went into the farming bank account to pay loans. At the time of the parties' separation, Fertilizer Plant was worth $403,750.

### (b) Home Place

In 2002, the parties built a house on 5 acres of Fertilizer Plant and called it Home Place. The house and land were appraised at $385,000. The parties stipulated that the land had a value of $25,000. A 2016 survivorship warranty deed conveyed the property to Arlan and Cindy as joint tenants.

### (c) Lenard's Farm

Arlan purchased property called Lenard's Farm, consisting of 160 acres of dry cropland, for $42,000 in 1991. On Arlan's 1994 agricultural balance sheet, he listed the property's value at $64,000. At the time of marriage, he owed $40,000 for the property.

Within 2 weeks of the marriage, Arlan presented Cindy with a promissory note for $60,000 and asked her to sign it. The promissory note included $40,000 from the initial Lenard's Farm loan, plus an additional $20,000. The parties paid off the note during the marriage. Throughout the marriage, portions of the land were sold and the funds were deposited into the marital checking account. In 2002, the parties sold a portion of Lenard's Farm, along with other farmland, and purchased property called Holmesville Farm in a "1031 exchange." Arlan explained a 1031 exchange as a way to avoid paying capital gains tax when "you sell . . . a piece of property, and you transfer the proceeds from that to another piece of property that you're purchasing within a certain time."

At the time of separation, Lenard's Farm consisted of 36 acres and was valued at $153,000. Arlan asserted that he should be awarded the property at a value of $40,000, representing the amount that he owed on Lenard's Farm at the time of marriage.

### (d) Grandma's Farm

In September 2003, Arlan and Cindy purchased property called Grandma's Farm, consisting of 160 acres of dry cropland, from Arlan's mother. The joint tenancy warrant deed showed consideration of $80,000. Internal notes from the

parties' bank reflect that on September 29 the bank advanced $80,296 for the purchase. The loan was to be paid over the course of 15 years.

Arlan testified that after purchasing the land for $80,000, his mother wrote him a check for $20,000—25 percent of the purchase price—as an inheritance. Arlan's sister testified that she also received $20,000 at that time from their mother. Arlan claimed that he applied the $20,000 to the purchase price of Grandma's Farm and borrowed the rest from the bank. He did not have a copy of the check he claimed to have received from his mother. Bank records show normal monthly payments and do not reflect a $20,000 payment toward the loan.

Cindy testified that the parties paid $80,000 to the bank "and then we received $20,000 credit" from Arlan's mother. Cindy's counsel asked, "So to clarify this: Perhaps, the ground was supposed to be sold for $100,000, and instead it was sold for 80 and you went to the bank and got the bank note to pay the 80?" Cindy answered, "Correct." She did not recall that they received a check. She testified that Arlan's three siblings "received $20,000 credit" and testified "[t]hat came out of the [$]80,000 that was paid is the way I understood it." Cindy felt the $20,000 was a gift to both of them.

At the time of separation, Grandma's Farm had a value of $236,000 and 68 acres remained from the original purchase. Arlan claimed that 25 percent of its appraised value was nonmarital, because he bought it from his mother for $80,000, but received $20,000 back from her.

### (e) Holmesville Farm

During the marriage, the parties purchased property called Holmesville Farm, which is irrigated cropland, for $249,000. As noted earlier, in 2002, the parties purchased Holmesville Farm in a "1031 exchange."

Arlan claimed that 61 percent of the purchase price was nonmarital, because they purchased it with $32,000 related

to the Lenard's Farm sale and with $121,500 of sale proceeds from property called Rademacher Farm. At the time of marriage, Arlan valued Rademacher Farm at approximately $70,000 with debt of $27,500. Thus, at the time of marriage, Arlan's equity in Rademacher Farm was $42,500. In 2002, Arlan sold Rademacher Farm for $149,000.

During the marriage, a storm damaged an irrigation pivot and the equipment was replaced through insurance funds. Holmesville Farm was valued at $734,000 at the time of separation. Arlan contended after reducing that amount by 61 percent, the marital value of the property was $286,260.

### 3. District Court's Decree

The district court found that Arlan met his burden of proof "with respect to property owned by [Arlan] prior to the marriage and . . . with respect to the tracing of the proceeds from the sale of portions of property that [he] owned prior to the marriage." The district court did not mention appreciation or cite any case law discussing it.

The district court approved Arlan's proposed division of the land. Thus, it awarded Fertilizer Plant to Arlan and did not include any of the property's value as marital property. After setting aside nonmarital portions, the court awarded Arlan as marital property Home Place valued at $361,000, consistent with Arlan's proposed division of property listing that number along with "$386,000.00 [-] $25,000.00." It awarded Arlan Lenard's Farm valued at $40,000. With respect to Grandma's Farm, the district court found that Arlan's mother "gifted back" to him $20,000 and that he should receive credit for that gift. It awarded him the property with a marital value of $177,000, which we observe to be 75 percent of $236,000. The district court found that placing a marital value on Holmesville Farm of $286,260 was appropriate, citing a 2007 decision by the Court of Appeals.[2]

---

[2] *Shafer v. Shafer*, 16 Neb. App. 170, 741 N.W.2d 173 (2007), *modified on denial of rehearing* 16 Neb. App. 327, 743 N.W.2d 781 (2008).

The district court divided the net marital estate equally. Thus, it ordered Arlan to make an equalization payment of $398,664.88 to Cindy.

### 4. Court of Appeals

Cindy appealed, assigning numerous errors. Some of the errors concerned the district court's classification, valuation, and division of the marital estate.

The Court of Appeals recognized that we had not directly applied the active appreciation rule to farmland. After reviewing our decisions in *Stanosheck v. Jeanette*[3] and *Stephens v. Stephens*,[4] the Court of Appeals determined that the rule should apply to agricultural land.

As will be discussed further in our analysis, the Court of Appeals disagreed with the district court's determinations regarding each of the five parcels. It reversed this portion of the district court's decision and remanded the cause with directions to equitably divide the marital estate in accordance with the Court of Appeals' classifications of marital value and Arlan's nonmarital value.

Arlan filed a petition for further review, which we granted.

## III. ASSIGNMENTS OF ERROR

Arlan assigns five errors in his petition for further review, each dealing with a particular parcel of land. He assigns, restated and reordered, that the Court of Appeals erred in (1) finding that $333,750 of appreciation on Fertilizer Plant was part of the marital estate, (2) finding that $129,000 of Lenard's Farm was marital property, (3) finding that the marital value of Holmesville Farm was $691,500, (4) including the value of the Home Place land as marital property, and (5) finding that all of Grandma's Farm was marital property.

---

[3] *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016).

[4] *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

## IV. STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.[5]

[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[6]

[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[7]

## V. ANALYSIS

[4-6] Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances.[8] In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties.[9] There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.[10]

[7] Prior to our decision in *Stephens*, we treated separate property as remaining nonmarital unless both of the spouses

---

[5] *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

[6] *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

[7] *Simons v. Simons, supra* note 5.

[8] *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012).

[9] See *Kauk v. Kauk, supra* note 6.

[10] *Id.*

contributed to the improvement or operation of the property or the spouse not owning the property or not receiving the inheritance or gift significantly cared for the property during the marriage.[11] But in *Stephens*, we held that the appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.[12]

[8] The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income.[13] Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.[14] Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property.[15] Passive appreciation is appreciation caused by separate contributions and nonmarital forces.[16]

[9,10] After *Stephens*, we have adhered to the framework that any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.[17] The original value of an asset may be nonmarital,

---

[11] See *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), *abrogated, Stephens v. Stephens, supra* note 4.

[12] *Stephens v. Stephens, supra* note 4.

[13] *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] See, *Simons v. Simons, supra* note 5; *Kauk v. Kauk, supra* note 6; *Higgins v. Currier*, 307 Neb. 748, 950 N.W.2d 631 (2020); *White v. White, supra* note 13; *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017).

while all or some portion of the appreciation of that asset may be marital.[18]

[11] The oft-cited three-step process of a marital property division[19] must account for appreciation, which may be treated separately from the original capital or value of an asset. Thus, in a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties.[20]

With this refined three-step process in place, we start with the first step and turn our attention to whether the active appreciation rule should apply to agricultural land. The Court of Appeals cited our decisions stating that the rule applies equally to appreciation or income during the marriage of any nonmarital asset,[21] and it determined that the rule should apply to farmland. We agree.

In Arlan's supplemental brief in support of his petition for further review, he did not contest that the active appreciation rule should apply to agricultural land; instead, after observing that we had not directly applied the rule to farmland, he contended that the Court of Appeals should have remanded the cause to provide him an opportunity to satisfy the two-prong test from *Stephens*. At oral argument, however, he backed away and contended that agricultural land should be treated differently, using "common sense."

---

[18] See *Stephens v. Stephens, supra* note 4.

[19] See, e.g., *Kauk v. Kauk, supra* note 6.

[20] See *id.*

[21] See, *White v. White, supra* note 13; *Stephens v. Stephens, supra* note 4.

But the need for an evidentiary link between the appreciation and its cause is no surprise. Although the rule's application to agricultural land may have been novel, the rule itself was not.

The underlying concept of the active appreciation rule is not new. Forty years ago, an annotation in the American Law Reports stated that courts in most cases had recognized that an increase in value of a spouse's separate property—unattributable to funds, property, or effort by either spouse—constituted separate property.[22]

By the time of the trial in 2021, we had spoken on a number of occasions about how appreciation on a nonmarital asset should be treated. In 2015, we examined to what extent the appreciation in a separate premarital portion of a retirement account was caused by the efforts of either spouse.[23] The next year, we set forth the two-prong test discussed above with respect to investment earnings accrued during the marriage on a nonmarital portion of a retirement account.[24] In 2017, when we decided *Stephens*, we held that "the principles set forth in *Stanosheck* apply equally to appreciation or income during the marriage of any nonmarital asset."[25] We did not carve out any exceptions.

Two decisions in 2020 further addressed the active appreciation rule and the need for evidence regarding causation.[26] In one, we discussed in detail our case law and that of three other states concerning active appreciation and stated that "[w]e adhere to the active appreciation rule articulated in *Stephens*."[27] Notably, in both of the 2020 decisions, we cited the lack

---

[22] Annot., 24 A.L.R.4th 453 (1983).

[23] *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015).

[24] See *Stanosheck v. Jeanette, supra* note 3.

[25] *Stephens v. Stephens, supra* note 4, 297 Neb. at 205, 899 N.W.2d at 595.

[26] See, *Higgins v. Currier, supra* note 17; *White v. White, supra* note 13.

[27] *White v. White, supra* note 13, 304 Neb. at 960, 937 N.W.2d at 850.

of evidence to show that the increase in value resulted from something other than the active efforts of either spouse.

To find active appreciation in nonmarital property, a treatise described three determinations that a court must make.[28] First, the court must find that the nonmarital property in question appreciated during the marriage.[29] Second, the court must find that the parties made marital contributions to the property.[30] Third, the court must find a causal connection between the marital contributions and at least part of the appreciation.[31] This is generally consistent with our two-prong test which presumes the appreciation of a nonmarital asset during the marriage is marital unless the party seeking to classify the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.[32]

[12] Some assets are more subject to active appreciation, while others are more subject to passive appreciation.[33] By its nature, real estate is more prone to passive appreciation.[34] This is because real estate tends to rise and fall in value for reasons beyond the parties' control.[35] However, a Tennessee court, in discussing a farming operation, stated:

> We have no doubt that the continued profitability of a farm operation serves to increase the land's value, particularly where the only apparent use of the land is farming. The routine advance of expenses for the farming

---

[28] See 1 Brett R. Turner, Equitable Distribution of Property § 5:56 (4th ed. 2021).

[29] See *id.*

[30] See *id.*

[31] *Id.*

[32] See *White v. White, supra* note 13.

[33] See 1 Turner, *supra* note 28, § 5:57.

[34] See *id.*

[35] See *id.*

operation is, in our opinion, a real and substantial contribution made through the use of the [parties'] marital funds.[36]
The treatise cautions that "while it is wrong to make a blanket assumption that all appreciation in real estate is passive . . . , the nature of the asset nevertheless is a significant factor in accurately determining the cause of any increase in value."[37] Ultimately, whether appreciation in real estate is active or passive depends on the facts and circumstances of each case. In that regard, evidence relating to the *cause* of appreciation is key.

[13] The burden is on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income.[38] With respect to the evidentiary burden, the treatise explained why placing the burden of proof on the owning spouse was the better policy.[39] To start, it is consistent with the general rule that the burden of proof rests with the party claiming that property is nonmarital.[40] Further, it places the burden of proof upon the spouse who, as the owner of the property, has the best access to the relevant evidence.[41] Doing so helps to curtail abuses of the discovery process by owning spouses, who are sometimes reluctant or unwilling to comply with discovery.[42]

With these principles in mind, we separately discuss the five parcels of property at issue, setting forth the Court of Appeals' determinations before making our own independent conclusions.

---

[36] *Fickle v. Fickle*, 287 S.W.3d 723, 730-31 (Tenn. App. 2008).

[37] 1 Turner, *supra* note 28, § 5:57 at 946.

[38] *White v. White, supra* note 13.

[39] See 1 Turner, *supra* note 28.

[40] See, *id.*; *White v. White, supra* note 13.

[41] See 1 Turner, *supra* note 28.

[42] See *id.*

### 1. Fertilizer Plant

At the time of marriage, Arlan valued Fertilizer Plant at $70,000. At the time of the parties' separation, it was worth $403,750. The Court of Appeals determined that the appreciation on Fertilizer Plant, amounting to $333,750, was marital property. We agree.

Arlan satisfied the first part of the two-prong test. There is no dispute that the growth in Fertilizer Plant was readily identifiable to Arlan's premarital land.

Arlan failed to carry his burden regarding the second prong of the test. The record contains no evidence regarding the cause of the appreciation. Arlan asserts in his petition for further review that the value increased due to market forces and not due to the active efforts of either spouse. But he provided no testimony or other evidence to support that assertion at trial. The burden of proof on Arlan was not insurmountable. For example, evidence that values of similar property in the same area had increased by a particular percentage during the marriage or evidence that the parties left the land untouched over the course of the marriage would have provided the district court with a basis to treat the appreciation as nonmarital. But because nothing in the record explains the increase in value, we agree with the Court of Appeals that the district court abused its discretion by treating the appreciation on this property as nonmarital property.

### 2. Lenard's Farm

The record shows that at the time of marriage, Lenard's Farm had a value of $64,000 and that Arlan owed $40,000 on a note for the land's purchase. By the time of separation, Lenard's Farm was valued at $153,000. The Court of Appeals determined that Arlan was entitled to a setoff for $24,000, representing the equity he had in Lenard's Farm at the time of marriage, and that the remaining value of $129,000 was marital property. Thus, it concluded that the district court

abused its discretion by including a marital value of $40,000 for Lenard's Farm.

[14] The equity in property at the time of marriage is a nonmarital asset which, if established, should be set aside as separate property.[43] Thus, $24,000 of the value of Lenard's Farm should be set off to Arlan as nonmarital property. Because the record contains no evidence regarding the cause of the increase in value of the land, there is nothing to rebut the presumption that the appreciation in Lenard's Farm was marital. Accordingly, we agree with the Court of Appeals that the district court abused its discretion in determining that $40,000 of Lenard's Farm, rather than $129,000, was marital property.

### 3. Holmesville Farm

The Court of Appeals recognized that although Holmesville Farm was purchased during the marriage, part of the purchase entailed an exchange involving Arlan's premarital property. The Court of Appeals reasoned that Arlan was entitled to a set off of $42,500 due to the sale of Rademacher Farm, which was Arlan's nonmarital property. Because Holmesville Farm was valued at $734,000 at the time of separation, the Court of Appeals determined that the marital value was $691,500. It concluded that the district court abused its discretion in classifying only $286,260 as marital property.

Relying on *Shafer v. Shafer*,[44] Arlan contends that the marital value of Holmesville Farm should be reduced by 61 percent to account for the nonmarital property used to acquire it. *Shafer*, a Court of Appeals' decision, was decided 10 years prior to *Stephens*. Even though we had not yet announced the active appreciation rule, the trial court in *Shafer* made findings related to the rule, reasoning:

---

[43] See *Onstot v. Onstot*, 298 Neb. 897, 906 N.W.2d 300 (2018).

[44] *Shafer v. Shafer, supra* note 2.

"There is no evidence of any substantial improvements to the land after its acquisition and it further appears that the appreciation in value of the land from the 1992 value of $150,000.00 to the present value of $260,500.00 is due to market forces and circumstances separate from any improvements made to the property by the parties. Upon consideration of the evidence, the court finds that [the wife] has established that 45.33% of the current value of the 160 acres . . . is attributed to her inheritance and that such value should be set aside as her sole and separate property and the same is excluded from the marital estate."[45]

In finding no abuse of discretion, the Court of Appeals noted the absence of evidence to show that the appreciation in value was the result of any substantial improvement or the nonowning spouse's farming and care of the property during the marriage. In *Stephens*, "[w]e expressly adopt[ed] the active appreciation rule that does not distinguish between the efforts of the owning spouse and the efforts of the nonowning spouse."[46] We disapprove of *Shafer* to the extent it is inconsistent with *Stephens*.

Here, Arlan failed to meet his burden with respect to the considerable appreciation in value of Holmesville Farm. The record is devoid of evidence that the increase was due to market forces and not due to the active efforts of either spouse. Accordingly, we agree with the Court of Appeals that the marital value was $691,500 and that the district court abused its discretion in classifying only $286,260 as marital property.

### 4. Home Place

In 2002, the parties built their marital home upon 5 acres of Arlan's premarital land. The Court of Appeals determined that Home Place was marital property. It reasoned that the

---

[45] *Id.* at 173-74, 741 N.W.2d at 176.

[46] *Stephens v. Stephens, supra* note 4, 297 Neb. at 206, 899 N.W.2d at 595.

value of the land could not be separated from the structure and cited a case[47] regarding commingling of separate property with marital property. We agree with the Court of Appeals' conclusion, though perhaps not its reasoning.

The Home Place land is 5 acres of land that was part of Fertilizer Plant. As discussed above, Arlan valued Fertilizer Plant at $70,000 at the time of marriage. In the Court of Appeals' division of property, it set off $70,000 of Fertilizer Plant to Arlan as his nonmarital property. Thus, he has already received credit for the premarital value of the land that is now known as Home Place.

At the time of trial, the parties agreed that the 5 acres of Home Place land had a value of $25,000. But Arlan's attempt to receive credit for the appreciation in value of the land fails. He did not meet his burden to show that any appreciation in value was not due to the active efforts of one or both of the parties. Accordingly, we agree with the Court of Appeals that the district court abused its discretion in setting off to Arlan $25,000 of Home Place as nonmarital property.

### 5. GRANDMA'S FARM

The Court of Appeals stated that the record showed the parties financed the full $80,296 for the purchase of Grandma's Farm and did not show that the $20,000 gift from Arlan's mother was used to purchase the property or was used as a payment on the loan. The Court of Appeals determined that Arlan failed to meet his burden of proof, that the entire $236,000 value of Grandma's Farm was marital property, and that the district court abused its discretion in classifying 25 percent of Grandma's Farm as nonmarital property.

[15] Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital.[48] The parties

---

[47] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[48] *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

agree that Arlan's mother gave each of her four children $20,000 after Arlan and Cindy purchased this property from Arlan's mother for $80,000. They dispute whether it was an inheritance to Arlan or a gift to both parties.

[16] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[49] The district court found that Arlan's mother "gifted back" to Arlan $20,000 and that he should receive credit for that gift. Given the conflicting evidence, we cannot say that this finding was clearly untenable.

But the district court did more than merely set off $20,000 to Arlan. By treating the $20,000 gift as 25 percent of the property's purchase price, the district court essentially turned the $20,000 gift into a $59,000 set off. It abused its discretion in doing so.

We conclude that $20,000 of the $236,000 value of Grandma's Farm should be set off to Arlan. Accordingly, $216,000 of Grandma's Farm is marital property.

### 6. RESOLUTION

Upon further review, we conclude that the proper marital and nonmarital values of the property at issue are as follows:

| Property | Marital Value | Arlan's Nonmarital |
|---|---|---|
| Fertilizer Plant | $333,750 | $70,000 |
| Lenard's Farm | 129,000 | 24,000 |
| Holmesville Farm | 691,500 | 42,500 |
| Home Place | 385,000 | 0 |
| Grandma's Farm | 216,000 | 20,000 |

We affirm the Court of Appeals' determination as so modified. We remand the cause to the Court of Appeals and direct that it remand to the district court for an equitable division of the marital estate using the above classifications.

---

[49] *White v. White, supra* note 13.

## VI. CONCLUSION

The Court of Appeals properly applied the active appreciation rule to agricultural land. Because Arlan failed to show that the land's appreciation was not caused by the active efforts of either party, we affirm the Court of Appeals' determination that the appreciation on Fertilizer Plant, Lenard's Farm, and Holmesville Farm was part of the marital estate. We further agree that the entirety of Home Place is marital property. But we cannot say that the district abused its discretion in finding that Arlan's mother made a $20,000 gift in connection with the purchase of Grandma's Farm.

We affirm the Court of Appeals' decision as modified to decrease the marital value of Grandma's Farm determined by the Court of Appeals by $20,000. We remand the cause to the Court of Appeals with directions to remand to the district court for an equitable division of the marital estate using marital values determined in this decision.

Affirmed as modified, and cause
remanded with directions.