IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GAUDREAULT V. GAUDREAULT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DARLENE R. GAUDREAULT, APPELLEE,

V.

PAUL H. GAUDREAULT, APPELLANT.

Filed June 6, 2023.    No. A-22-598.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Joni Visek for appellant.

Ryan P. Watson, of Wagner, Meehan & Watson, L.L.P., for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Paul H. Gaudreault appeals from the decree of dissolution entered by the district court for Douglas County, dissolving his marriage to Darlene R. Gaudreault. Paul claims that the district court erred in excluding the parties' home from the marital estate and awarding it solely to Darlene, and in its valuation of personal property awarded to Darlene. Finding no abuse of discretion, we affirm.

## STATEMENT OF FACTS

Paul and Darlene were married on July 26, 1975. Prior to the marriage, Darlene was living in a home on Nicholas Street in Omaha, Nebraska, which was owned by her grandfather and her mother. Paul began living in the home upon the parties' marriage, and he lived there with Darlene

(and subsequently their children) until the parties separated and he moved out in the fall of 2021. The children of the marriage have reached the age of majority.

On April 1, 2021, Darlene filed a complaint in the district court, seeking dissolution of her marriage to Paul. Paul filed an answer and counterclaim for dissolution on July 1. Paul admitted to all paragraphs of Darlene's complaint and the parties sought an equitable division of the marital estate.

Trial was held before the district court in June 2022. In addition to receiving various documentary exhibits, the court heard testimony from Darlene, Paul, the parties' daughter, and Darlene's mother. The following evidence was adduced.

Darlene testified that she began living in the family home in 1974, at which time it was owned by Darlene's mother and grandfather. After Darlene and Paul were married in 1975, Paul moved into the home. The couple did not pay rent or insurance on the home and Darlene's mother was responsible for the home's maintenance.

Paul testified that he assisted in several home improvement projects while living in the home. Between 1984 and 1989, the basement was excavated; improvements to the backyard were made, including installing a patio, swimming pool, and cedar fence; the home's siding and doors were replaced; and the kitchen was remodeled. Paul stated that he provided the tools and material for the projects. Paul completed the work because he believed he would later have an interest in the property, though he conceded that no one had explicitly made that assurance to him.

Darlene testified that she was gifted an interest in the home by her mother in 1990. A "survivorship warranty deed" was entered into evidence, reflecting that in May 1990 Darlene's mother added Darlene as a joint tenant with right of survivorship for $1 of consideration. In 1998, the entire home was gifted to Darlene exclusively. Another "survivorship warranty deed" was entered into evidence, reflecting that in April 1998, Darlene's mother conveyed the property to Darlene for $1 of consideration. Darlene's mother testified that she intended for the various interests in the home to be a gift for Darlene alone.

Darlene testified that after the home was gifted to her exclusively, Paul no longer worked on improvement projects or renovations. Paul would often express that he knew it was Darlene's house, and so was uninterested in putting marital funds or labor towards its improvement. After 1998, the couple performed nominal improvements, such as replacing a fence and the roof with homeowner's insurance settlement funds, and updating a brick patio with materials provided by Darlene's mother. However no other renovations occurred and the home's furnace, windows, and carpet had not been replaced since Darlene was gifted the home. Darlene testified that no funds from the marital account were ever used for any improvements. A list of home improvements, compiled by Paul, was entered into evidence and reflects only three projects completed after 1998, including replacing the roof, updating the patio, and replacing the garage doors.

The parties' daughter testified that she grew up in the family home and moved out in 1996. While living in the home, she observed many improvement projects, which were paid for by Darlene's mother and grandfather. However, the home improvements had since ceased and the home looked largely the same as it did when she moved out. She agreed that many items in the home, including the carpet and windows, needed to be replaced.

An appraisal conducted in January 2022 was offered into evidence, which valued the home at $200,000. The appraiser noted in the accompanying report that there was a shortage of homes

in the area and that the value trend of the neighborhood was increasing at about 14 percent a year. Information from the Douglas County Assessor was also entered into evidence, which reflected a valuation of $141,600 in May 2022. Darlene found these valuations to be high, as she would have to make repairs and cosmetic updates to the home to prepare it for the market. Paul also offered a property record from 1975, valuing the family home at $11,720. An inflation worksheet was accepted as an aid to the district court and reflects that $11,720 in 1975 equaled $58,819.95 in 2021.

Darlene and Paul each submitted an accounting of the personal property left in the home, and therefore in Darlene's possession. Paul indicated that the 23 items left in the home totaled $18,950. Paul attributed the majority of the value to several antique furniture pieces and to a diamond ring. Darlene provided an accounting which valued only 8 items at $515. Darlene testified that the diamond ring was her wedding ring, and that any furniture items not included in her accounting had been gifts from her family members. Paul conceded that some of the antique furniture referenced in his accounting were gifts from Darlene's grandparents.

On July 11, 2022, the district court entered a decree, dissolving the parties' marriage. The court determined that the interests in the family home that Darlene received in 1990 and 1998 were nonmarital assets, as the interests were gifts from Darlene's mother to Darlene. Regarding whether any portion of the appreciation in the home's value was marital property, the court noted that Darlene had established that the appreciation was not attributable to active efforts by either party. The court concluded that the home's appreciation was due to passive forces and accordingly awarded Darlene all rights, interests, and obligations concerning the nonmarital home. In a property division chart attached to the decree, the court valued Darlene's personal property in the home to be $5,000. Darlene was ordered to make a $43,910.68 equalization payment to Paul within 90 days of the entry of the decree.

Paul appeals.

ASSIGNMENTS OF ERROR

Paul assigns that the district court erred in (1) its decision to treat the parties' home as a nonmarital asset and award it solely to Darlene, and (2) its valuation of the personal property awarded to Darlene.

STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022).

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021).

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Simons v. Simons, supra.*

ANALYSIS

Paul assigns error to the district court's exclusion of the family's home from the marital estate and the award of it separately to Darlene. He also challenges the court's valuation of personal property awarded to Darlene.

Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2 530 (2012). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Kauk v. Kauk, supra.* There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id*.

The Nebraska Supreme Court recently reiterated the framework for the determination of nonmarital property. See *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). The court noted that prior to its decision in *Stevens v. Stevens*, 297 Neb. 188, 899 N.W.2d 582 (2017), it treated separate property as remaining nonmarital unless both of the spouses contributed to the improvement or operation of the property or the spouse not owning the property or not receiving the inheritance or gift significantly cared for the property during the marriage. See *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), *abrogated, Stephens v. Stephens, supra.* But in *Stephens*, the court held that the appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses. *Stephens v. Stephens, supra.* After *Stephens*, the court has adhered to the framework that any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Parde v. Parde, supra.* The original value of an asset may be marital, while all or some of the appreciation of that asset may be marital. *Id*.

In a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties. *Kauk v. Kauk, supra.* The court in *Parde* also confirmed that the three-step process of a marital property division must account for appreciation, which may be treated separately from the original capital or value of an asset. *Parde v. Parde, supra.* With these principles in mind, we turn to Paul's assigned errors.

*Family Home.*

Paul argues that any property acquired by either husband or wife during a marriage is a part of the marital estate and cites to Neb. Rev. Stat. § 42-617 (Reissue 2016) for this proposition. Paul contends that Darlene's mother conveyed an interest in the family home to him when she gifted Darlene an interest in 1990 and the entire property in 1998.

We find Paul's reliance on § 42-617 to be misplaced. The 1949 legislative bill which set forth § 42-617 also repealed the Community Property Act of 1947. Section 42-617 reads:

> As used in sections 42-603 and 42-617 to 42-620, the words property acquired shall mean (1) all property acquired by either husband or wife, or both, during marriage, and on

and after September 7, 1947, and prior to April 20, 1949, and (2) all property acquired after April 20, 1949, (a) by exchange for, (b) by the increase of, (c) with the proceeds of, or (d) with the income from, any property defined in subdivision (1) of this section.

§ 42-617; see also, Laws 1949, c. 129, § 1, p. 337. The Nebraska Legislature's narrow definition of "property acquired" was intended to provide limitations of claims to community property. See *id*. Here, Paul uses the language from the first part of § 42-617(1) to argue that he is entitled to property acquired by Darlene during the marriage. However, Paul ignores the second part of § 42-617(1), which limits the applicability of the definition to the period between when the Community Property Act was enacted and repealed. See id; Laws 1947, c. 156, § 3, p. 427. Because Paul and Darlene were not married until after 1949, § 42-617 is inapplicable to the present case.

Paul also cites to Neb. Rev. Stat. § 76-118 (Reissue 2018) to argue that because Darlene was identified as "married" in the two deeds, that language included Paul in a joint tenancy. Section 76-118 outlines the common law requirement of the four unities of time, title, interest, and possession necessary to create a joint tenancy. Paul does not point to specific language in the statute to support his assertion, and we disagree that the inclusion of the word "married" on a deed is sufficient to include an unnamed spouse as a joint tenant.

In its decree, the district court found that the family home had been gifted to Darlene from her mother. Gifts and inheritances, even when received during the marriage, are presumed to be nonmarital. *Parde v. Parde, supra*. To make a valid inter vivos gift, there must be an intention to transfer title to property, delivery by the donor, and acceptance by the donee. *In re Estate of Marsh*, 307 Neb. 893, 951 N.W.2d 486, 489 (2020). Both Darlene and her mother testified that the interest in the home deeded to Darlene in 1990, and the entire property deeded to Darlene in 1998, were intended to be gifts to Darlene exclusively. Darlene's mother noted that if she wanted the family home to go to Paul as well, she would have included both Darlene's and Paul's names on the deed. Both deeds note that they were given to Darlene in consideration of $1. Paul does not argue that Darlene's gifted interests in 1990 and 1998 were defective in any way. Based on the record before us, we conclude that the district court properly found that the family home was a gift and thus, a nonmarital asset.

Paul further cites to Neb. Rev. Stat. § 40-104 (Reissue 2016) to argue that in 1998, he was conveyed a marital interest by Darlene's mother because he was never asked to extinguish his marital interest. Section 40-104 provides that the "homestead of a married person" cannot be "conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both spouses." See § 40-104. This statute is not implicated in this case as it was Darlene's mother, not Darlene, who conveyed various interests in the home. Moreover, because we have found that the home was gifted to Darlene by her mother, Paul never had a marital interest in the home which needed to be extinguished.

Paul next argues that because he made a variety of repairs and renovations to the property from 1975 until he moved out of the family home in 2021, the appreciation of the home's value is marital property. Paul cites to the *Van Newkirk* case for the proposition that the home has become marital property due to his contribution to and significant care of the property.

As noted above, the Nebraska Supreme Court abrogated the *Van Newkirk* case and now follows an active appreciation framework as outlined in *Stevens v. Stevens, supra*. The burden is

on the owning spouse to prove the extent to which marital contributions did not cause the appreciation or income. *Id*. Both Darlene and Paul testified to improvements Paul made to the family home through various projects and renovations. However, the record reflects that the majority of these projects were completed prior to 1998, when Darlene was gifted the property in its entirety. Darlene noted various items in the home which were in need of repair or replacement and the parties' daughter stated that the home looked the same as it did when she moved out in 1996. Paul's own list of improvement projects shows only three which were completed after 1998. Darlene testified that two of those projects, replacing the roof and updating the patio, were funded by an insurance settlement and her mother, respectively. Further, the appraisal conducted in January 2022 noted that a scarcity of homes in the area was contributing to an increasing value trend.

Based on the timing of the home improvement projects and the evidenced market trends, we find that the increase in the home's value is attributable to passive appreciation. See *Stevens v. Stevens, supra* (passive appreciation is appreciation caused by separate contributions and nonmarital forces). Thus the district court did not abuse its discretion in determining that Darlene had established that the appreciation in the home's value was not due to the active efforts of either party, and in awarding the home solely to Darlene.

*Personal Property.*

Lastly, Paul argues that the personal property retained by Darlene should have been valued at $18,950, and that the district court's valuation of $5,000 was inequitable. Paul contends that Darlene's many refinished and preserved antiques were undervalued. Paul also alleges that the parties' homeowner's insurance policy, which includes $211,000 in coverage for personal property, indicates that Darlene continues to insure property far in excess of $18,950.

Paul and Darlene each submitted an accounting of the personal property left in the home and in Darlene's possession. Paul's accounting included 23 items, valued at a total of $18,950, whereas Darlene's accounting included 8 items, valued at a total of $515. Paul conceded at trial that some of the antique pieces included in his accounting were gifts to Darlene. See *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023) (gifts are presumed to be nonmarital). Additionally, Darlene identified the diamond ring in Paul's accounting as her wedding ring, which our appellate case law has found to be a gift. See, *Ireland v. Ireland*, No. A-00-1274, 2002 WL 484221 (Neb. Ct. App. Apr. 2, 2002) (not designated for permanent publication); *Dougherty v. Dougherty*, No. A-93-1077, 1995 WL 437504 (Neb. Ct. App. July 25, 1995) (not designated for permanent publication). Thus, these particular antiques and the diamond ring are not included in the marital estate and need not be equitably divided.

However, some items of personal property appear in both of Paul's and Darlene's accounting, valued at significantly different amounts. For example, Paul valued a living room chair at $300, while Darlene placed the value at $50. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022). The district court received the parties' accounting and heard testimony from both Paul and Darlene regarding the personal property left in the family home, including where the items were purchased and for how much. The district

court determined that the value of the personal property was $5,000, an amount between the valuations provided by each party. We cannot say that the district court abused its discretion in this finding.

CONCLUSION

The district court did not abuse its discretion in excluding the parties' home from the marital estate and awarding it solely to Darlene, or in its valuation of personal property awarded to Darlene.

AFFIRMED.