IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MCCARTY V. MCCARTY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CRYSTAL A. MCCARTY, APPELLANT,

V.

BRENDA S. MCCARTY, APPELLEE, AND JON PARSONS, APPELLEE.

Filed February 13, 2024.    No. A-20-901.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Jeffrey A. Wagner and Nicholas A. Gibson, of Wagner Meehan, L.L.P., for appellant.

Stephanie Weber Milone for appellee, Brenda S. McCarty.

Jon Parsons, pro se.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

Crystal A. McCarty appeals from the order of the district court for Sarpy County that dissolved her marriage to Brenda S. McCarty and divided the marital estate. On appeal, Crystal argues the district court erred by failing to equitably distribute the marital estate and in failing to distribute to Crystal a portion of Brenda's retirement accounts and a share of the marital home. She also assigns error to the classification and award of two vehicles as non-marital assets.

Jon Parsons, who was joined as a necessary party to the proceedings, filed a brief assigning as error the district court's failure to award him attorney fees.

Upon our review, we find no abuse of discretion by the district court in its classification and distribution of the marital estate, nor in its denial of attorney fees to Parsons. Consequently, we affirm the district court's order.

- 1 -

BACKGROUND

*Procedural History.*

This is the third time this case has come before us on appeal. Crystal filed a complaint for dissolution of her marriage to Brenda in July 2017. After the district court overruled Crystal's motion to continue trial, a trial was held in May 2018 in her absence, and the district court entered an order dissolving the parties' marriage and dividing the marital estate. On appeal, we found the district court abused its discretion in overruling Crystal's motion to continue trial, we vacated the dissolution order, and remanded the cause to the district court for further proceedings.

Following the second trial, in July 2020, the district court entered a dissolution decree, Crystal appealed, but the district court denied her request to proceed in forma pauperis. See *McCarty v. McCarty*, A-22-071. We affirmed the decision of the district court but noted that Crystal had 30 days to pay the statutory docket fee. See *McCarty v. McCarty*, A-22-071. Having paid the docket fee, Crystal's appeal of that decree is now before us. We summarize the evidence from the July trial that is relevant to Crystal's assigned errors.

*Evidence at Trial.*

Crystal, who is from Jamaica, met Brenda in 2012. Crystal came to the United States in January 2014; she and Brenda were married in April. No children were born of the marriage. Crystal filed a complaint for dissolution of the marriage on July 24, 2017; the parties had separated earlier that month. Crystal testified that when the parties married, Brenda was in debt, and that she helped pay off that debt throughout their marriage. Crystal testified that Brenda did not have any credit accounts to use at the time of their marriage because Brenda's credit score was so low, and the debts had to be paid down to qualify; however, Brenda disputed this. During the marriage, Brenda earned between $80,000 to $100,000 per year. She testified that Crystal did not work consistently during their marriage, contrary to Crystal's assertion that she was consistently employed outside the home.

Brenda had two premarital retirement accounts which she contributed to during the marriage. Brenda was unable to give a value to the portion of each account that was nonmarital. Statements purporting to show the contributions to, and the value of, the retirement accounts were entered into evidence.

When the parties married, Brenda owned a Chevy Tahoe. Crystal testified that marital funds were used to repair it. Brenda testified that no repairs were done but it was possible some brakes were put on the vehicle; otherwise, it was well maintained. During the marriage, the parties purchased a Hyundai Tucson. The loan on the vehicle was in Brenda's name. Crystal estimated the value of the Tucson at the time of separation was $18,494. Crystal drove the Tucson after the parties separated; however, Brenda continued to make the payments. At some point, Brenda ceased making payments on the Tucson, and Crystal surrendered it to the creditor. Thereafter, Brenda paid the necessary amount to redeem the car from repossession. As of April 2018, there was still a loan on the Tucson of approximately $25,000. Brenda testified that at the time the car was surrendered to the creditor, the loan exceeded the value of the vehicle.

Brenda owned the marital home prior to the parties' marriage, and at the time of trial it was still encumbered by a mortgage of approximately $182,000. In 2017, the assessed value of the home was approximately $182,000.

There was testimony regarding various items of personal property, credit card accounts, bank accounts, and property located out of the country. Facts relevant to this portion of the marital estate will be discussed below.

*Dissolution Decree.*

The district court entered a decree dissolving the marriage and dividing the marital estate. At the outset, the district court noted that it had had numerous opportunities to observe the parties throughout the case, and it found neither party to be credible. The district court noted that the evidence presented regarding Brenda's retirement accounts was insufficient for the district court to determine the amount earned during the parties' marriage, and that it would be improper to guess. It therefore awarded both accounts to Brenda.

The district court determined that the Chevy Tahoe was Brenda's premarital asset. The district court found that the Tucson was purchased during the marriage and that Crystal was the primary driver, including after the parties' separation. It found that Brenda made the loan payments, but when she stopped doing so, Crystal made no attempt to keep the Tucson. The district court found that after the car's repossession, Brenda paid the outstanding balance to regain possession; it noted that the loan balance owed substantially exceeded the car's fair market value and that Brenda was now solely responsible for that loan. The district court noted that the marital estate includes property accumulated through joint efforts of the parties, and that because Brenda acquired the Tucson after the parties separated it was Brenda's nonmarital asset.

Regarding the marital residence, the district court found the value at the time of the parties' separation was approximately $182,000, about the same amount owed on the mortgage at the time of trial. The district court found no value in the home for equalization purposes, and it awarded Brenda the marital residence. Crystal appeals.

## ASSIGNMENTS OF ERROR

Crystal assigns that the district court erred in failing to equitably distribute the marital estate. Specifically, she assigns the court erred in failing to distribute to her a share of Brenda's retirement accounts and a share of the marital home. She also assigns the court erred in classifying the Chevy Tahoe and Hyundai Tucson as nonmarital property and awarding them to Brenda.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). This standard of review applies to the trial court's determinations of alimony and property division. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial

court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

ANALYSIS

Crystal assigns that the district court erred in its distribution of the marital estate. Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id*. There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id*.

In a dissolution action, the equitable division of property is a three-step process. *Kauk v. Kauk*, 310 Neb. 329, 966 N.W.2d 45 (2021). The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property to the party who brought the property to the marriage. *Id*. The second step is to value the marital assets and marital liabilities of the parties. *Id*. And the third step is to calculate and divide the net marital estate equitably between the parties. *Id*.

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Radmanesh v. Radmanesh, supra*. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Kauk v. Kauk, supra*. The burden of proof rests with the party claiming that property is nonmarital. *Id*. The burden to show that a debt is nonmarital is on the party making that assertion. *Id*.

*Brenda's Retirement Accounts.*

Crystal assigns that the district court erred in failing to award her a portion of Brenda's retirement accounts.

The evidence presented at trial regarding the retirement accounts was vague, at best. Brenda had two retirement accounts, "Plan A" which earned a specific benefit depending upon the hours she worked, and "Plan B" which involved monetary contributions. The extent of Brenda's testimony regarding these accounts was that portions of these funds came into the accounts during the marriage and anything prior to 2014 would be premarital, but she did not know what those amounts were. In its decree, the court stated

> The evidence received by the Court with regard to [Brenda's] retirement plans A and B is insufficient to show the amount earned between the date of marriage and the date of separation. It would be improper for the Court to guess at an amount. Therefore, both retirement plans are awarded to [Brenda].

- 4 -

Because "Plan A" is based on credits without any corresponding dollar value, we are unable to determine its beginning monetary value; however, the documentary evidence offered and received indicates that according to an account representative, as of January 1, 2017, Plan A had an accrued benefit of $910. According to a retirement plan statement, "Plan B" had a value of approximately $3,500 in mid-2014 when the parties married and a value of $14,030.41 on June 30, 2017, shortly before the parties' separation. This equates to a $10,530.41 increase during the course of the marriage.

Neb. Rev. Stat. § 42-366(8) (Reissue 2008) provides: "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and deferred compensation benefits owned by either party, whether vested or not vested." When applying this statute, the Nebraska Supreme Court has held generally that amounts added to and interest accrued on pension or retirement accounts which have been earned during the marriage are part of the marital estate, but contributions before marriage or after dissolution are not assets of the marital estate. *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016).

Based upon this principle, the marital portion of Plan B is $10,530.41. If any amount of this was nonmarital as passive income on premarital contributions, it was incumbent upon Brenda to prove that amount. See *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017) (burden is on owning spouse to prove extent to which marital contributions did not cause appreciation). She failed to do so. Therefore, the documentary evidence, uncontroverted by any testimony, reflects a marital value of Plan B of $10,530.41. (We note that the district court stated in its decree that because it found neither party credible, it relied upon collateral evidence to determine a number of issues presented to it.) Because Brenda presented no evidence as to the premarital or nonmarital value of Plan A, the entire $910 is deemed marital.

Despite finding the evidence insufficient to determine the nonmarital value of the retirement plans, the district court stated in its order that it was awarding to Brenda

> Her IBEW Plan A and Plan B pension benefits, a portion of which was accrued prior to the marriage of [Crystal] and [Brenda] and, therefore, that portion is premarital property, a portion of which was accrued following the physical separation of [Crystal] and, therefore, are non-marital property, and a portion of which was accrued during the marriage.

It is clear, therefore, that the district court intended to award Brenda the full value of the retirement accounts, both nonmarital and marital. We find no abuse of discretion in its decision not to award a portion to Crystal.

There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). Section 42-365 allows a court to order a division of property as may be reasonable. See *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). What constitutes a reasonable division of marital property depends on the facts of each case, but to make that determination, a court may consider, among other things, the circumstances of the parties, the duration of the marriage, and the history of the contributions to the marriage by each party. See *id*. An award of less than one-third of the marital estate does not necessarily

constitute an abuse of discretion. See, *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986).

Here, the parties were married for only 3 years, and it is clear from the testimony at trial that Brenda earned substantially more than Crystal, and thus contributed more financially to the marriage. There was testimony that money was sent to Crystal's family during the marriage, although the amount was disputed. Additionally, Brenda is 30 years senior to Crystal, making her much closer to retirement. Considering the short duration of the marriage, the contributions of the parties to the marriage, and the circumstances of the parties, we find no abuse of discretion in the district court's award of the retirement accounts to Brenda.

*Marital Home.*

Crystal assigns that the district court erred when it failed to award her a share of the marital home. Brenda owned the home prior to her marriage to Crystal. Although the assessed value of the home increased approximately $12,000 during the marriage, it was encumbered to its full value at the time of separation. Therefore, the court found there was no value in the home for purposes of equalizing assets and awarded the home and its debt to Brenda. We cannot say the district court abused its discretion in doing so.

*Chevy Tahoe.*

Crystal assigns that the district court erred in awarding the Chevy Tahoe to Brenda as separate marital property after the vehicle was comingled. The district court found the Tahoe was Brenda's premarital property. At trial, Crystal admitted that Brenda owned the Tahoe prior to the parties' marriage but claimed that marital funds were used to repair it; therefore, it became marital property. Brenda testified that other than possibly brake work, no repairs were done on the vehicle.

The district court specifically stated in its order that it found neither party to be credible. Because it found the Tahoe was Brenda's premarital property, it is clear the district court did not find credible Crystal's testimony that marital funds were used to repair the Tahoe. We are mindful that the district court observed the witnesses in this case, and it adopted Brenda's versions of facts related to the Tahoe over Crystal's version. On this record, we cannot find that the district court abused its discretion in finding the Tahoe to be Brenda's premarital property and distributing it to her as such.

*Hyundai Tucson.*

Crystal assigns that the district court erred in awarding the Hyundai Tucson to Brenda as post-separation property when it was never removed from the marital estate. The evidence showed that as of April 2018, there was still a loan owed on the Tucson of approximately $25,000. Brenda had been making payments on the Tucson post-separation, but Crystal continued to drive it. Brenda ceased making payments, and rather than make payments on the car herself, Crystal surrendered it to the creditor. After surrender, Brenda paid the necessary fees to get the car released to her and remains solely liable for its loan amount. Brenda testified that at the time the car was surrendered to the creditor, the loan far exceeded the vehicle's value.

The district court found that because Crystal surrendered the car and Brenda reacquired it after the parties had separated and was solely responsible for its loan, the vehicle was Brenda's

nonmarital asset. We cannot say the district court abused its discretion in its classification and award of the Tucson to Brenda.

*Distribution of Remaining Property.*

Crystal challenges the overall distribution of the marital estate, noting that she was awarded several debts and no property of value compared to Brenda. According to Crystal's calculations, Brenda was awarded $50,423 from the marital estate whereas Crystal's portion was -$7,186. We determine Crystal's calculations are flawed.

According to Crystal, the home had equity of $11,451 which the court awarded to Brenda. However, the district court determined the home had no equity. Crystal also includes $14,950 in retirement accounts awarded to Brenda; however, this overstates the marital portion of the retirement accounts and in our analysis above, we found proper justification for the award to Brenda. She also asserts that the district court awarded Brenda $51,232 in personal property, mostly comprised of the two vehicles which we determined the district court properly classified as nonmarital. As to the remaining personal property, the district court stated that there was no collateral evidence establishing the value of any property. The district court stated that due to the lack of credibility of both parties, it could not determine what property existed or the value of such property.

As to debts, the district court apportioned the parties' credit card debts between them, and we note that Brenda was ordered responsible for $4,519.66, and Crystal was ordered responsible for $4,332.64.

The district court did not include in its decree a breakdown of its property division with assigned values but it is clear that its ability to value the marital estate was hindered considerably by the lack of credible evidence. The only item Crystal identifies in her calculation of the division of the marital estate that the district court considered as a marital asset having value is Brenda's retirement accounts. While we recognize that an award to Brenda of these accounts results in a division of the marital estate of less that than one-third to one-half to Crystal, we find no abuse of discretion. The marital estate is small and given the circumstances of the parties, the short duration of the marriage, and the history of contributions to the marriage, the court's division is reasonable. We cannot say the district court abused its discretion in dividing the marital estate.

*Parsons' Cross-Appeal.*

Parsons was found to be a necessary party and joined in the dissolution matter due to having loaned money to the parties during their marriage. In this appeal, he filed a brief of appellee and sought affirmative relief but did not designate his brief as a cross-appeal, contrary to Neb. Ct. R. App. P. § 2-109(D) (rev. 2023). However, he assigned errors and in most other respects, his brief conforms to that of an appellant. Depending on the particulars of each case, failure to comply with the mandates of § 2-109(D) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all. *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021) *disapproved on other grounds, Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022). Because Parsons' brief would comport with a brief of appellant, we will proceed to address the merits of his cross-appeal.

Parsons assigns 11 errors, but the only error that is assigned and argued is the denial of his request for attorney fees. At trial, Parsons offered an affidavit into evidence to establish his attorney fees, but the district court sustained an objection to the document. He does not assign error to that ruling. As such, there was no evidence before the district court establishing the amount of attorney fees or supporting an award of fees. We cannot find the district court erred in failing to award Parsons attorney fees.

CONCLUSION

Finding no abuse of discretion in the district court's classification and distribution of the marital estate, nor in its denial of attorney fees, we affirm its order.

AFFIRMED.