IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


Ilg v. Ilg


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


Kristin R. Ilg, appellee,

v.

Dustin D. Ilg, appellant.


Filed December 26, 2023.    No. A-22-874.


Appeal from the District Court for Lancaster County: Jodi L. Nelson, Judge. Affirmed as modified.

Nicholas R. Glasz, of Glasz Law Firm, for appellant.

Amie C. Martinez and Megan M. Zobel, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.


Pirtle, Chief Judge, and Bishop and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

Dustin D. Ilg appeals the Lancaster County District Court's entry of a decree dissolving his marriage to Kristin R. Ilg, dividing the marital estate, determining custody and visitation, determining child support, and the court's award of alimony to Kristin. For the reasons set forth herein, we affirm as modified.

## II. STATEMENT OF FACTS

Dustin and Kristin met when they were teenagers. After dating for 10 years, they married on December 13, 2008, and had three sons: Jackson, born in 2009; Ryder, born in 2012; and Kellen, born in 2014. The parties separated in June 2020.

- 1 -

## 1. COMPLAINT AND PRETRIAL ORDERS

On September 10, 2020, Kristin filed a complaint for dissolution. In response, Dustin filed an answer and counterclaim which was subsequently amended. Both parties requested that the court dissolve the parties' marriage, equitably divide the parties' marital property, and determine child support; however, Kristin sought spousal support and sole legal and physical custody of the parties' minor children, whereas Dustin sought either sole custody or joint custody.

In April 2021, the district court entered a temporary order awarding the parties joint legal custody with sole physical custody awarded to Kristin subject to Dustin's reasonable rights of parenting time, which was identified as, at a minimum, every other weekend from Friday at 4 p.m. until Sunday at 7:30 p.m. and every Tuesday from 4 p.m. to 7:30 p.m. The order also set forth a holiday and summer parenting time schedule; ordered Dustin to provide all transportation; ordered Dustin to pay temporary child support of $956 per month for the parties' three children; and required Dustin to deposit $1,285 per month into the parties' joint checking account for Kristin to pay the mortgage and utilities associated with the marital property, pay the parties' cell phone bill, and service the parties' credit card debt.

## 2. TRIAL

The trial was held over several days from March through June 2022. At the time of the trial, Dustin was 40 years old and Kristin was 39 years old. They had been in a relationship for 23 years and married for 13 years.

Although the evidence adduced during the trial was voluminous, we limit our recitation of the evidence to the issues relevant to this appeal, which are limited portions of the parties' marital estate, custody, and alimony.

### (a) Marital Estate

Although the parties extensively litigated the distribution of their marital estate during the dissolution hearing, the only portions of the marital estate disputed in this appeal concern the parties' real estate and Dustin's Edward Jones IRA (which the parties refer to as Edward Jones IRA account 7239). The real estate at issue concerns two parcels of property in Waverly, Nebraska, which were purchased during the parties' marriage. These two parcels of land will be referred to as the "marital property" and the "rental property." Both parcels of land are unusual in that each parcel contains two housing structures.

### (i) Marital Property

In 2016, the parties purchased the marital property from Dustin's grandmother's estate for $190,000, using a portion of Dustin's inheritance for the $38,000 downpayment. There are two homes located on the marital property, which the parties refer to as the "big house" and the "little house." The parties resided in the "big house" and planned to have Dustin's mother move into the "little house." After purchasing the marital property, the parties improved the "big house" by installing hardwood floors in the kitchen and hallway; installing new cabinets, countertops, and appliances in the kitchen; replacing vanities in two bathrooms; replacing tiles in one bathroom; and repainting the upstairs rooms. In the "little house," the parties refinished or replaced drywall, stained the hardwood floors, and rerouted some of the downstairs plumbing. According to Kristin,

if she was awarded the marital property, she still planned on having Dustin's mother move into the "little house."

Kristin testified that in 2016, the marital property was originally assessed at $238,000; however, this amount was reduced after an appraisal determined that the fair market value of the property was $203,000, which was approximately 85 percent of the original assessed value. In 2022, the marital property was assessed at $209,000, but Kristin testified that she determined that the fair market value of the rental property in 2022 was $177,667, which was 85 percent of the assessed value. The debt remaining on the marital property was $122,150.

Kristin requested that the court award her the marital property so that the minor children could continue living in their home and could maintain their ties to their neighbors and their community. She also noted that the children play with their friends in the neighborhood and the home was within walking distance to the children's schools.

Dustin requested that the court award him the marital property because

that property's been in my family since the mid-1940's. I grew up over there, being [babysat] by my grandmother. My dad lived there since 1990. . . . I've really just spent a lot of time over there. I have a lot of memories.

. . . working with my father in the shop and around the property. . . . we roofed houses, we played, rode go-carts, learned how to ride my mini-bikes . . . birthdays, you name it.

. . . all our family stuff was usually done at Grandma's . . . it's just a lot of memories there, and I plan to continue making memories there with my boys. I mean, just as I did.

### (ii) Rental Property

The parties purchased the rental property in 2019 for $82,000. They borrowed $80,000 of the purchase price from Kristin's father. During the parties' marriage, they rented out the two homes on the rental property charging $825 for the larger home and charging $425 for the smaller home. In 2022, the rental property was assessed at $119,800.

### (iii) Dustin's Edward Jones IRA

Dustin requested that the court award him his Edward Jones Roth IRA account 7239 in its entirety on the basis that it was nonmarital property. Dustin testified that he rolled over another IRA into the Edward Jones Roth IRA on December 4, 2008, which preceded the parties' December 13 wedding. He further testified that he did not make any contributions to the account during the parties' marriage and that the only withdrawal from the account was $5,500 in 2015. That withdrawal was converted into a Roth IRA. Edward Jones statements covering December 2008 to June 2021, were received into evidence and corroborated Dustin's testimony regarding contributions and withdrawals from this account.

### (b) Parenting Plan

Prior to the trial, the parties entered into a stipulated parenting plan in which they agreed that Kristin was to be awarded sole legal and physical custody of the parties' children subject to Dustin's reasonable rights of parenting time which were set forth in the plan. Kristin testified that

the parties agreed to the parenting plan the week of trial and that they had edited the plan numerous times to reach an agreement.

Despite the parties' agreement on the parenting plan, Dustin expressed during his testimony that he was not happy with the parenting plan. During Dustin's testimony, he admitted that the parties had signed the stipulated parenting plan, that he understood the parenting plan, that the parties had followed that plan since April 2021 when the temporary order was entered, and that he was requesting that the court approve that plan. However, he also stated that he wanted joint custody of the children and he did not believe that the stipulated parenting plan was in the minor children's best interests.

### (c) Parties' Employment

#### (i) Kristin

Prior to the parties' marriage, Kristin graduated from a dental assistant program and began working as a dental assistant. During the parties' marriage, she began working at Ameritas as a dental liaison and she obtained a bachelor's degree. Kristin testified that she has been promoted to the highest tier in her department at Ameritas. She works from home from 7:30 a.m. to 4 p.m. from Monday through Friday.

From 2018 to 2021, Kristin's income was as follows: $41,647 in 2018; $48,232 in 2019; $50,268 in 2020; and $61,152 in 2021. Kristin explained that in 2021, Ameritas had mandatory overtime due to staffing and system issues but that she would not have that overtime moving forward. Accordingly, she estimated her income for 2022 at $51,064. Kristin also estimated that her living expenses would be approximately $8,877 per month, assuming that she was awarded the marital property.

#### (ii) Dustin

During the parties' marriage, Dustin was employed at BNSF. In addition to his employment at BNSF, Dustin engaged in several side businesses including flipping items for profit, drywalling, snow removing, and lawn mowing. Dustin's income for 2018 through 2021 was as follows:

| | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|
| BNSF Salary | $64,437 | $55,946 | $57,177 | $56,592 |
| Snow Removal | $19,293 | $10,428 | ($10,059) | $18,099 |
| Rent + Depreciation | n/a | $ 697 | $ 5,731 | $14,700 |
| Added-Back Depreciation | $11,321 | $19,559 | $27,080 | unknown |
| Total Income | $95,051 | $86,630 | $79,929 | $89,391 |

These figures do not include any income Dustin earned from drywalling or flipping items for profit. In determining Dustin's 2022 income, Kristin added an additional $10,000 per year to Dustin's income to reflect income earned from drywalling and flipping items for profit.

Dustin disputed the income that Kristin attributed to him. He testified that he was no longer going to operate his snowplow business because "I just don't have the means. I don't have the

help. I might not have the area to do it. . . . I want to make sure I have time set aside for my children, since it's going to be – obviously, 50/50 or worse." He also testified that he had lost money from the snowplow business for the previous 2 years.

He further testified that he does not advertise for his drywall work and that drywall work is inconsistent. However, he admitted in his deposition that he initially stated that he did not have any income from drywalling in the past 2 years, but then stated that he had earned $5,000 during that time. He further admitted that in 2022 he received $7,000 in drywall income, and that a $5,000 check for drywalling or plaster work performed by Dustin was written to his girlfriend. He also testified that his "flips" of buying and selling items was "really hit and miss. I would say I'm pretty close to even, maybe a little bit ahead over all of the years."

### 3. DISSOLUTION DECREE

The court, pursuant to the parties' stipulated parenting plan, awarded Kristin sole legal custody and primary physical custody of the minor children subject to Dustin's parenting time. The court specifically noted that the parties had agreed to the parenting plan which they specified was in the minor children's best interests. The court accepted the parenting plan but added the following additional terms that it found to be in the minor children's best interests: that adult supervision shall be provided for the minor children at all times between 10 p.m. and 7 a.m. and that if Kristin or Dustin were unable to provide overnight adult supervision, the other party shall be offered the right of first refusal.

Regarding the parties' incomes, the court found that Dustin could earn, or could reasonably be expected to earn, $98,292 per year based upon sources including Dustin's salary from BNSF, income from the rental properties, income from snow removal and lawn mowing, drywall work, and various flips of personal property that Dustin buys and then sells at a profit. Specifically, the court found that

> [Dustin] has failed to prove that such earning capacity is speculative or over which he has little to no control in that the history of such earnings in the two to three years prior to trial demonstrate such earnings, and no evidence that such opportunities for continued earnings would cease. Rather, [Dustin] only testified that he no longer wanted to do the work because he wanted to spend more time with his children. Given [Dustin's] parenting time schedule (every other weekend and one evening a week), [Dustin] continues to have the same opportunity for said earnings. [Dustin] failed to produce sufficient or credible evidence to rebut the presumption that the application of the [child support] guidelines will result in a fair and equitable child support order.

Dustin was ordered to pay $1,263 per month in child support for the parties' three minor children and the court awarded Kristin $500 per month in alimony for a period of 72 months.

Regarding the parties' marital property, the court found that

> [Kristin] has presented detailed itemization and supporting evidence of the parties' marital estate. She has, where possible, obtained appraisals and set out additional information to support her asserted values for the same. [Dustin,] conversely, has provided the court with very little to base values on, beyond his testimony, which the court finds mostly lacking in credibility. This court had the opportunity to see and hear the testimony

of both parties. [Dustin's] answers often appeared to be in the form of a question and were certainly not definitive or convincing. As indicated, other than his own testimony, his basis for value was lacking.

[Dustin] asserts various pieces of personal property to be non-marital as well as funds in various investment accounts as non-marital. As to personal property, [Dustin] has failed to sufficiently identify the personal property he asserts as non-marital; he further failed to provide sufficient evidence to overcome the presumption that all such personal property is marital. As to the investment accounts [that Dustin] argues contain non-marital funds (in whole or in part), the Court finds that of the accounts in existence at the time of the marriage, [Justin] commingled marital funds within those accounts. Further, the Court finds that there has been insufficient tracing of such funds to show that the total amount of the funds at the time of the marriage remain in the accounts at the time of the divorce.

The Court finds that [Dustin] has failed to produce sufficient evidence to support his claims for set-off of those items and therefore rejects his request to do so. [Dustin] has failed to meet his burden of proof to set aside any asset as non-marital except for those that were agreed upon by [Kristin].

Dustin has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Dustin's assignments of error, restated, are that the district court erred in: (1) distributing the marital assets and debts by (a) awarding the marital home to Kristin, and (b) finding that Dustin had failed to produce sufficient evidence that his Edward Jones IRA account 7239 was nonmarital; (2) admitting the parties' stipulated parenting plan into evidence "despite [Dustin's] clear reluctance while testifying" and failing to award joint custody; (3) imputing income to him which resulted in a miscalculation of child support; and (4) awarding alimony to Kristin.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021).

## V. ANALYSIS

### 1. DIVISION OF MARITAL ESTATE

Dustin contends that the district court erred in its division of the marital estate. Specifically, he contends that the court erred in (a) awarding the marital property to Kristin and (b) finding that investment accounts in his name were nonmarital.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *Parde v. Parde, supra*. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.* The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *White v. White*, 304 Neb. 945, 937 N.W.2d 838 (2020).

### (a) Award of Marital Property to Kristin

Dustin contends that the district court erred in awarding the marital property to Kristin and awarding him the rental property. Dustin raises no issues regarding the classification of both of the properties as marital and he does not challenge the court's valuations of the properties. However, he contends that he should have been awarded the marital property because that property had been in his family since the 1940's, his grandmother babysat him in that home, his father began living in the home around 1990, and he spent a great deal of time at that property and created a lot of memories there.

Kristin, on the other hand, requested that the court award her the marital property for the stability of the children; that is, so the minor children could continue living in their home, their community, and with the same neighbors. She further testified that children play with their friends in the neighborhood and that the children's schools were within walking distance of the home.

In its order, the district court awarded the marital property to Kristin, "as the sole physical custodian of the children . . . where she and the children have resided since the home was purchased." We cannot say that the district court's decision to award the marital property to Kristin so the children could remain in the home where they had lived since 2016 constituted an abuse of discretion. This assignment of error fails.

### (b) Dustin's Edward Jones IRA

Dustin also contends that the district court erred in finding that he had failed to produce sufficient evidence that his Edward Jones IRA account 7239 was nonmarital. Specifically, he claims that this account, valued at $51,537, was nonmarital because the funds were rolled over to this account on December 4, 2008, which was prior to the parties' December 13, 2008, marriage. He further contends that he did not make any contributions to the accounts since that time. Kristin, on the other hand, claimed that the account was marital due to commingling of funds. She argues that "Dustin offered sporadic but not complete Edward Jones IRA statements from November 2008 to June 2021 into evidence. . . . He failed to produce sufficient evidence to carry his burden to prove the account was non-marital." Brief for appellee at 26.

This court has reviewed the exhibits containing Dustin's Edward Jones statements for account 7239 that were admitted into evidence. We note that although Dustin did not offer all of the statements from December 2008 until December 2020, he did offer all of the fourth quarter statements which listed the amount of any contributions and/or withdrawals during that calendar year. The exhibit establishes that $14,185.16 was rolled over into Edward Jones account 7239 on December 4, 2008. We are further able to discern that there were no further contributions to this

account from December 5, 2008, until June 25, 2021. And, with the exception of fees taken out of the account by Edward Jones, only one withdrawal was made from this account. That withdrawal of $5,500 occurred in 2015 and was converted to a Roth IRA account.

Because we are able to discern from the evidence that the initial contribution to Edward Jones account 7239 occurred prior to the parties' marriage, that no contributions were made to the account during the parties' marriage, and that the only withdrawal from the account was converted to a Roth IRA, we find that the district court erred in finding that this account was marital. We find that this account is nonmarital and is awarded solely to Dustin. Because the district court had denoted the split of the Dustin's IRA as half/half, not a specific amount, our determination does not impact the equalization judgment.

### 2. PARENTING PLAN/CUSTODY DETERMINATION

Next, Dustin assigns as error that the district court erred in failing to award the parties joint custody and in admitting the parties' stipulated parenting plan into evidence "despite [his] clear reluctance while testifying." Brief for appellant at 6.

Dustin did not object to the stipulated parenting plan when it was offered. As the Nebraska Supreme Court has consistently stated:

> If, when evidence is offered, the other party consents to its introduction, or fails to object, or to insist upon a ruling on an objection to the introduction of such evidence, and otherwise fails to raise the question of its admissibility, he waives whatever objection he may have had thereto.

*Griffith v. Griffith*, 230 Neb. 314, 316-17, 431 N.W.2d 609, 611 (1988). So, as it relates to that portion of the assignment that the court erred in admitting the stipulated plan into evidence, Dustin waived whatever objection he may have had thereto and this assignment fails. And, once the stipulated plan was received into evidence, the trial court had an independent responsibility to determine questions of custody and visitation of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

As we read the remainder of Dustin's assignment, he appears to suggest that the district court simply approved the stipulated parenting plan and custody arrangement, notwithstanding Dustin's own change of mind, without performing a best interests analysis. We disagree. The court's order demonstrates that the court conducted an independent determination of the children's best interests in that the court did not adopt the stipulated parenting plan verbatim. Instead, the court added an additional provision providing that adult supervision shall be provided for the minor children at all times between 10 p.m. and 7 a.m. and that if Kristin or Dustin were unable to provide overnight adult supervision, the other party shall be offered the right of first refusal. As to that portion of Dustin's assignment that the court erred by failing to conduct a best interests analysis following the admission of the stipulated parenting plan, that assignment fails.

### 3. CHILD SUPPORT

Dustin's third assignment of error is that the district court erred in its calculation of child support.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). Neb. Ct. R. § 4-204 (rev. 2020) provides in relevant part:

> (A) Total monthly income is the income of both parties derived from all sources, except all means-tested public assistance benefits which includes any earned income tax credit and payments received for children of prior marriages. This would include income that could be acquired by the parties through reasonable efforts. For instance, a court may consider as income the retained earnings in a closely-held corporation of which a party is a shareholder if the earnings appear excessive or inappropriate. . . .
>
> . . . .
>
> (E) If applicable, earning capacity may be considered in lieu of a parent's actual, present income. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources. When imputing income to a parent, the court shall take into consideration the specific circumstances of the parents, to the extent known. Those factors may include the parent's residence, employment and earnings history, job skills, educational attainment, literacy, age, health, and employment barriers, including criminal record, record of seeking work, prevailing local earning levels, and availability of employment.

Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). However, earning capacity should be used to determine a child support obligation only when there is evidence that the parent can realize that capacity through reasonable efforts. *Id*.

Here, Dustin does not dispute the income that he earns from his employment with BNSF Railroad. He objects to income imputed to him through his other side jobs such as drywalling, yard care, snow plowing, and flipping items. He contends that the court erroneously imputed income to him that was "far in excess of his actual earnings and beyond what he was reasonably capable of making" and that exercising his parenting time with the minor children makes earning similar income from his side jobs unworkable. Brief for appellant at 16. However, the district court found that Dustin's "income and earning capacity includes his salary from BNSF Railroad, income from the rental properties, income from snow removal and lawn mowing, drywall work and various 'flips' of personal property that he buys and sells at a profit." The court also found that

> Given [Dustin's] parenting time schedule (every other weekend and one evening a week), [Dustin] continues to have the same opportunity for said earnings. [Dustin] failed to produce sufficient or credible evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

The evidence adduced at trial established that the income Dustin earned from his side jobs including added-back depreciation was $30,684 in 2019; $22,752 in 2020; and $32,799 in 2021.

We note that the district court heard the evidence and observed the parties' testimony and, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than

another. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Based upon our review of the record and the deference that we give to the district court's determinations of credibility, we find that the district court's determination that Dustin is capable of maintaining similar earnings from his side jobs was not an abuse of discretion. This assignment of error fails.

### 4. ALIMONY

Dustin's fourth assignment of error is that the district court erred in awarding $500 alimony to Kristin for a period of 72 months. He points out that the parties were married for 13 years, both parties are still relatively young and are able to work, and Kristin's education and career were not interrupted during the parties' marriage.

In *Wiedel v. Wiedel*, 300 Neb. 13, 20-21, 911 N.W.2d 582, 588-89 (2018), the Nebraska Supreme Court stated:

> In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. In addition, a court should consider the income and earning capacity of each party and the general equities of the situation.
>
> The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. The ultimate criterion is one of reasonableness. An appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.

Alimony should not be used as a tool to equalize the parties' incomes or to punish one of the parties. *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). However, a disparity of income or potential income might partially justify an alimony award. *Id*.

Here, the evidence is undisputed that the parties have been married for 13 years. During the parties' marriage, Kristin obtained a Bachelor of Science degree. During the entirety of the parties' marriage, Kristin has been working full-time at Ameritas, while also caring for the parties' children. At the time of trial, Kristin's job allowed her to work from home. However, Kristin testified that, although she earned $61,152 in 2021, that amount included mandatory overtime. She testified that she will not have mandatory overtime in 2022 and estimated that her annual income would be approximately $51,100. The court found a significant disparity in the parties' monthly incomes, with Kristin earning $4,255 and Dustin earning $8,191. Additionally, Kristin estimated that her and the children's monthly expenses were about $8,975, leaving a large shortfall even with the $500 per month alimony award.

It is important to note that an appellate court does not determine whether we would have awarded the same amount of alimony that the district court did, but we instead only determine whether the alimony award was an abuse of discretion. *Radmanesh v. Radmanesh, supra*. Here, based upon the parties' disparate incomes and Kristin's and the children's monthly expenses, the

alimony awarded by the district court was not an abuse of discretion. This assignment of error fails.

## VI. CONCLUSION

We affirm the decision of the district court with the exception of Dustin's Edward Jones IRA account 7239. We reverse the district court's determination that this Edward Jones IRA was marital property, find that it is nonmarital property, and award 100 percent of the IRA to Dustin.

AFFIRMED AS MODIFIED.