Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/15/2016 09:06 AM CDT

Elizabeth E. Stanosheck, appellee, v.
Joseph P. Jeanette, appellant.
___ N.W.2d ___

Filed July 15, 2016.    No. S-15-490.

1. **Divorce: Appeal and Error.** In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Property Division: Appeal and Error.** As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.

4. **Divorce: Property Division.** In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.

5. **Property Division.** Equitable property division under Neb. Rev. Stat. § 42-365 (Reissue 2008) is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties.

6. ____. The ultimate test in determining the appropriateness of a property division is fairness and reasonableness as determined by the facts of each case.

7. **Divorce: Property Division.** As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule.

8. **Divorce: Property Division: Proof.** Where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate.

9. **Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.

10. **Divorce: Property Division: Pensions.** Under Neb. Rev. Stat. § 42-366(8) (Reissue 2008), the general rule is that amounts added to and interest accrued on pension or retirement accounts which have been earned during the marriage are part of the marital estate, but contributions before marriage or after dissolution are not assets of the marital estate.

11. ____: ____: ____. Investment earnings accrued during the marriage on the nonmarital portion of a retirement account may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of either spouse.

Appeal from the District Court for Cass County: JEFFREY J. FUNKE, Judge. Affirmed in part, and in part vacated and remanded for further proceedings.

Steven M. Delaney and A. Bree Robbins, of Reagan, Melton & Delaney, L.L.P., for appellant.

Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., L.L.O., and Megan M. Schutt, Senior Certified Law Student, for appellee.

WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

STACY, J.

## I. NATURE OF CASE

In this appeal from a decree of dissolution, error is assigned to the district court's classification, valuation, and division of certain marital property. After a de novo review, we find no abuse of discretion and affirm the district court's judgment in all respects but one—the division of the parties' retirement accounts. As it regards the retirement accounts,

we vacate the decree in part and remand the cause for further proceedings.

## II. BACKGROUND

Elizabeth E. Stanosheck (Elizabeth) and Joseph P. Jeanette (Joseph) were married in 2008. Elizabeth filed for dissolution in January 2014. From the time the divorce was filed until a few months before trial, the parties lived together in the marital home. They had no joint debts other than the mortgage on their home, a loan against Joseph's retirement account, and various household expenses. Joseph paid the majority of these expenses, and Elizabeth reimbursed him $600 to $800 per month. During the pendency of the action, a temporary order was entered on the agreement of the parties, requiring each to contribute payment toward the joint debts and home expenses, with Elizabeth paying 40 percent and Joseph paying 60 percent.

Trial was held in January 2015. The parties reached a comprehensive property settlement agreement, so trial was limited to just a few contested issues: (1) whether the marital estate should be valued at the time of trial or the time of filing, (2) how to divide the remaining proceeds from the sale of the marital home, and (3) whether Joseph was entitled to set off as nonmarital property a portion of the market growth to his retirement account.

### 1. VALUATION DATE

Elizabeth asked the court to value the marital estate at the time of trial, and Joseph asked that it be valued at the time the dissolution was filed. The district court found the date of trial was the more appropriate valuation date, reasoning:

> Though the evidence indicates that the parties were not actively spending time together, such as eating meals together or engaging in social activities together, the parties were still married, still residing in the home together, and still sharing household expenses.

Therefore, the Court finds that the valuation date for the division of assets and debts should be the date of trial herein.

### 2. DIVISION OF PROCEEDS FROM SALE OF MARITAL HOME

During the marriage, Joseph took out a $50,000 loan against his retirement account to contribute to building the parties' home. Payments on the loan were made every 2 weeks by withholding sums from Joseph's paycheck. At the time of trial, Joseph had paid back $12,000 on the loan. The marital home was sold prior to trial. The parties agreed to divide a portion of the net sale proceeds immediately and held $50,000 from the sale in trust, with the agreement that $38,000 of that sum would be used to repay the balance of the loan against Joseph's retirement account. The parties disagreed as to how the remaining $12,000 should be divided. Elizabeth asked that it be split equally between the parties, and Joseph asked to be awarded the entire $12,000 as reimbursement for the loan payments made during the marriage. The district court found the loan was a marital debt and noted that all repayment on the debt occurred during the marriage using sums earned during the marriage. The court then awarded each party an equal share of the remaining $12,000 sale proceeds.

### 3. DIVISION OF RETIREMENT ACCOUNTS

Both parties had retirement plans which predated the marriage and which increased in value during the marriage. With the exception of Joseph's Thrift Savings Plan, the parties agreed how the various retirement accounts should be classified, valued, and divided. The court accepted the agreement of the parties, finding it was fair, reasonable, and not unconscionable. The evidence adduced by the parties concerning their respective retirement accounts is set out below.

(a) Elizabeth's Retirement Accounts

Elizabeth had a retirement account with the Nebraska Public Employees Retirement System (NPERS) prior to the marriage. During the marriage, she rolled funds over from her NPERS account into an account with a securities investment company. Elizabeth also started a 401K retirement account with a new employer after the divorce was filed but before trial.

With respect to each of Elizabeth's retirement accounts, the parties stipulated that any premarital funds would be set off to her and that the "amounts that accrued during the term of the marriage" would be divided by the parties. The district court accepted the parties' stipulation and, in the narrative portion of the decree, made specific findings that Joseph should be awarded 50 percent of the "'accumulated contributions plus interest'" in both of Elizabeth's retirement accounts from the date of marriage to the date of trial. The judgment portion of the decree, however, omitted any reference to dividing Elizabeth's retirement accounts. The record indicates Elizabeth's attorney prepared the decree and Joseph's attorney approved the decree as to form before it was submitted to the court.

(b) Joseph's Retirement Accounts

Joseph had several retirement accounts which predated the marriage. He had a 401K defined contribution plan from a prior job. He had a Federal Employees' Retirement System (FERS) account through his current employer. Within this FERS account, he had a pension fund and a Thrift Savings Plan (hereinafter TSP). The TSP is a defined contribution plan. During the marriage, Joseph rolled over approximately $85,000 from his 401K into the TSP.

Regarding Joseph's FERS pension, the parties agreed Elizabeth was entitled to a portion of his pension "based upon the date of the marriage, the length of service of [Joseph], and the overlap between date of marriage, date of service, and the

valuation date." The district court accepted the parties' stipulation in that regard and found that Joseph had approximately 19 years of premarital service that would be excluded from Elizabeth's share of the annuity payments. The court then awarded each party 50 percent of Joseph's FERS pension benefits accrued from the date of marriage to the date of trial. No error is assigned to the manner in which the court divided Joseph's FERS pension.

The parties' primary disagreement at trial was over how to classify, value, and divide that portion of Joseph's TSP which accumulated during the parties' marriage. Simplified, the parties agreed that all contributions made to Joseph's TSP before the marriage were properly set off as nonmarital property and that the nonmarital funds rolled over into the TSP during the marriage were properly set off as nonmarital property. But the parties disagreed on whether all of the TSP investment earnings that accrued during the marriage were properly included in the marital estate.

Joseph took the position that some of the TSP growth that accrued during the marriage was marital property and that some was not. Specifically, he argued that the growth attributable to the nonmarital property portion of his TSP should also be classified as nonmarital and set off entirely to him. Joseph presented the testimony of an actuary who determined the total number of shares held in the TSP at the time of the marriage, the time the divorce was filed, and the time of trial. The expert then determined the value of the TSP account at each point in time by multiplying the number of shares in the TSP on that date by the price per share on that date. The expert testified the price per share varied with market conditions and over time had moved slowly in conjunction with movement in the stock market.

According to the expert, on the date of marriage, the TSP had 21,485.8536 shares valued at $15.3822 per share, for a total value of $330,499.70. The subsequent rollover of his premarital 401K into the TSP resulted in the purchase of an

additional 4,839.3736 TSP shares valued at $17.6207 per share for a total value of $85,273.15. On the date of trial, the TSP contained 32,523.5724 shares valued at $22.8987 per share for a total value of $744,747.52. As such, it was the expert's opinion that at the time of trial, Joseph's TSP had a total value of $744,747.52, of which $141,934.05 was marital (6,198.3452 shares at $22.8987 per share) and $602,813.47 was nonmarital (26,325.2272 shares at $22.8987 per share).

Elizabeth took the position that, just as the parties agreed to do with both of her retirement accounts, the court should classify all the passive market growth which occurred during the marriage as marital property and should divide it equally between the parties.

The district court made a factual finding that the increases in value to Joseph's TSP during the marriage were "attributable to the rollover of [his 401K] retirement plan, additional contributions made to the plan by [Joseph] during the marriage, and growth attributable to market gains." The court cited our holdings in *Priest v. Priest*[1] and *Reichert v. Reichert*[2] for the general proposition that "the marital estate includes that portion of pensions or retirement accounts earned during the marriage." The court then rejected Joseph's suggestion that investment income derived from the nonmarital property portion of his TSP account should be set off as nonmarital property, reasoning: "[N]either Nebraska case law nor Nebraska statutory authority authorize the classification of passive accumulations earned during the marriage as a non-marital asset. Therefore, this Court finds that the passive accumulations of the TSP account earned during the parties' marriage are part of the marital estate." The court set off as nonmarital the value of the TSP on the date of the marriage ($330,499.70) and the value of Joseph's 401K on the date it

---

[1] *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996).

[2] *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994).

was rolled over into the TSP ($85,273.15). As to the remaining TSP sums, the court awarded Elizabeth 50 percent of the "'accumulated contributions plus interest'" from the date of marriage to the date of trial.

Joseph timely appealed, and we granted his petition to bypass the Nebraska Court of Appeals.

## III. ASSIGNMENTS OF ERROR

Joseph assigns, rephrased and consolidated, that the district court erred in four respects: (1) valuing the marital estate at the time of trial rather than the date the divorce was filed; (2) dividing the remaining $12,000 from the sale of the marital home equally, rather than awarding the entire sum to Joseph; (3) classifying all of the growth in Joseph's TSP account during the marriage as marital property; and (4) omitting reference to Joseph's share of Elizabeth's retirement accounts in the judgment portion of the decree.

## IV. STANDARD OF REVIEW

[1,2] In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[4]

## V. ANALYSIS

### 1. Valuation Date

[3] As a general principle, the date upon which a marital estate is valued should be rationally related to the

---

[3] *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013).

[4] *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

property composing the marital estate.[5] The date of valuation is reviewed for an abuse of the trial court's discretion.[6]

Here, the court valued all the marital property at the time of trial rather than the date the divorce action was filed. The court found it significant that, even after filing for divorce, the parties continued to live together in the marital home and share in household expenses. The valuation date applied by the district court was rationally related to the property composing the marital estate, and we find no abuse of discretion in valuing the marital estate at the time of trial. Joseph's assignment of error to the contrary is without merit.

## 2. SALE PROCEEDS

[4-6] In a divorce action, the purpose of a property division is to distribute the marital assets equitably between the parties.[7] Equitable property division under Neb. Rev. Stat. § 42-365 (Reissue 2008) is a three-step process.[8] The first step is to classify the parties' property as marital or nonmarital.[9] The second step is to value the marital assets and marital liabilities of the parties.[10] The third step is to calculate and divide the net marital estate between the parties.[11] The ultimate test in determining the appropriateness of a property division is fairness and reasonableness as determined by the facts of each case.[12]

---

[5] *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008); *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002); *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000).

[6] See, *Blaine, supra* note 5; *Tyma, supra* note 5.

[7] *Tyma, supra* note 5.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[7] After selling their home during the pendency of this case, the parties reached agreement regarding an equitable division of all but $12,000 of the net sale proceeds. Elizabeth asked that the remaining $12,000 be divided equally between the parties, and Joseph asked that the $12,000 be awarded solely to him as reimbursement for payments made on the TSP loan. It is undisputed that Joseph made these loan payments through automatic paycheck withholding of money earned during the marriage. As a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate, unless it falls within an exception to the general rule.[13]

The court divided the $12,000 equally between the parties, reasoning that the TSP loan was a marital debt and all repayment on the debt occurred during the marriage using sums earned during the marriage.[14] The court did not abuse its discretion in awarding the parties an equal share of the remaining $12,000 sale proceeds.

### 3. RETIREMENT ACCOUNTS

Joseph assigns that the district court erred in several respects when classifying, valuing, dividing, and decreeing division of the parties' retirement accounts. As it regards Joseph's TSP, he does not dispute that a portion of his TSP is properly classified as marital property, but he argues the trial court abused its discretion in classifying all of the appreciation which occurred during the marriage as marital property. Joseph also argues the court's decision to determine the value of the TSP shares, rather than divide the marital shares outright, was improper. Finally, as it regards Elizabeth's retirement

---

[13] *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

[14] *Id*. at 837-38, 749 N.W.2d at 475 (husband's "contributions to the savings plan were made with deductions from his . . . paycheck which was marital property. Accordingly, the contributions to the savings plan made during the marriage . . . were subject to division").

accounts, Joseph argues the court erred by failing to reference his share of Elizabeth's retirement accounts in the judgment portion of the decree.

[8,9] The rules regarding classification of property in dissolution actions are well established. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate.[15] Where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate.[16] The burden of proof rests with the party claiming that property is nonmarital.[17]

[10] Neb. Rev. Stat. § 42-366(8) (Reissue 2008) provides: "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and deferred compensation benefits owned by either party, whether vested or not vested." When applying this statute, we have held generally that amounts added to and interest accrued on pension or retirement accounts which have been earned during the marriage are part of the marital estate, but contributions before marriage or after dissolution are not assets of the marital estate.[18]

In *Coufal v. Coufal*,[19] decided after the decree was entered in the present case, we recognized a narrow and fact-specific exception to the general rule that the marital estate includes amounts added to and interest accrued on pensions and retirement accounts. The husband in *Coufal* participated in NPERS. Before the marriage, his NPERS account had a balance of $76,271.45. At trial, he presented evidence the

---

[15] *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015).

[16] *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997).

[17] See, *Brozek, supra* note 4; *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[18] *Coufal, supra* note 15.

[19] *Id.*

account had a balance of $219,830.07. Pursuant to Neb. Rev. Stat. § 84-1301(17) (Reissue 2014), members of NPERS were guaranteed a statutory rate of return on their retirement plans. The husband claimed the premarital portion of his NPERS account should be valued to include the statutorily guaranteed interest on his premarital principal. He offered expert testimony establishing that, given the statutory rate of return, the adjusted value of his premarital principal was $120,010.82.

The district court in *Coufal* concluded the interest accruing on the premarital portion of the husband's NPERS account was part of the marital estate, reasoning that the interest accruing during the marriage did not fit into any recognized exception to the general rule that property acquired by either party during the marriage is included in the marital estate.

On appeal, we framed the issue as "whether the increase in value of the premarital portion of the retirement account should be considered as part of the marital estate."[20] To determine which portion of the NPERS retirement account was nonmarital, we examined to what extent the appreciation in the separate premarital portion of the account was caused by the efforts of either spouse. We analogized the NPERS account to a certificate of deposit with a fixed rate of interest owned by one spouse before the marriage. And we observed that the increase in value of the premarital portion of the NPERS account was not contingent on the husband's continued employment, but, rather, was guaranteed by statute prior to the marriage and was not derived from the contributions of either party during the marriage. We concluded the increase in value of the premarital portion of the husband's retirement account was readily identifiable and traceable to the premarital principal, and we rejected the suggestion that the growth was inextricably commingled with marital property.

---

[20] *Id.* at 382, 866 N.W.2d at 78.

Ultimately, we concluded on the unique facts in *Coufal* that the increase in value of the premarital portion of the NPERS account was not a marital asset.[21]

We stated in *Coufal* that "[o]ur reasoning and conclusion are specific to the facts presented in this case,"[22] but Joseph argues on appeal that our reasoning has application beyond the NPERS retirement account at issue in *Coufal* to potentially include retirement accounts like the TSP at issue here. Elizabeth argues it would be inequitable to apply the *Coufal* exception to Joseph's retirement account while not applying it to hers, particularly when she had an NPERS account which predated the marriage—the precise type of account we considered in *Coufal*.

[11] We agree the reasoning of *Coufal* is not necessarily restricted to any particular kind of retirement account; rather, the applicability of *Coufal* depends upon the facts of each case and the evidence adduced. After *Coufal*, investment earnings accrued during the marriage on the nonmarital portion of a retirement account may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of either spouse.

Here, we are mindful that neither the parties nor the district court had the benefit of our analysis in *Coufal* when this case was tried or decided. It makes little sense to conduct a de novo review of the evidence adduced and the findings made against a standard neither known to nor contemplated by the parties or the court at the time the case was tried. Because *Coufal* recognized a fact-specific exception to the

---

[21] *Coufal, supra* note 15.

[22] *Id.* at 381, 866 N.W.2d at 77.

general rules governing classification and division of retirement accounts and because here, both parties have retirement accounts which may arguably fall within the exception, we conclude it is appropriate to vacate that portion of the decree which divided the parties' retirement accounts and remand the cause for further consideration and/or proceedings. In so doing, we express no opinion regarding the applicability of the *Coufal* exception to the specific facts of this case.

Accordingly, we vacate that portion of the decree which classifies, values, and divides the parties' retirement accounts, and we remand the cause for further consideration and/or proceedings regarding the equitable division of the parties' retirement accounts.

Because we are vacating the decree as it regards division of the parties' retirement accounts and remanding the cause for further proceedings, it is unnecessary to reach Joseph's final assignment of error.

## VI. CONCLUSION

The judgment of the district court is affirmed in all respects but one. That portion of the decree concerning the retirement accounts of the parties is vacated, and the cause is remanded to the district court for further consideration and/or proceedings to determine the appropriate classification, valuation, and division of the parties' retirement accounts.

AFFIRMED IN PART, AND IN PART VACATED AND
REMANDED FOR FURTHER PROCEEDINGS.

HEAVICAN, C.J., not participating.