IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PAGE V. ARMSTRONG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BILLY J. PAGE, JR., APPELLEE,

V.

JANELLE L. ARMSTRONG, APPELLANT.

Filed July 30, 2024.    No. A-23-743.

Appeal from the District Court for Douglas County: TODD O. ENGLEMAN, Judge. Affirmed.

Sarah M. Hart, Tracy Hightower-Henne, and Allison Heineman, of Hightower Reff Law, L.L.C., for appellant.

Heather L. Horst, of Walz Law Offices, P.C., L.L.O., for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Janelle L. Armstrong appeals from the order of the district court for Douglas County that dissolved her marriage to Billy J. Page, Jr., and distributed the marital estate. Janelle assigns that the district court abused its discretion by inconsistently calculating "active appreciation" in investment and retirement accounts and abused its discretion by improperly dividing the marital estate without correct reimbursement to the parties. Following our review, we find no abuse of discretion in the district court's calculations; accordingly, we affirm.

## BACKGROUND

Janelle and Billy were married in September 2015. Billy filed a complaint to dissolve the marriage in August 2022. The marital estate included a variety of vehicles, bank accounts, retirement accounts, credit card debts, and loans, as well as a residence and other personal property.

- 1 -

Because Janelle challenges only the district court's distribution regarding one retirement account, and the method used to credit her for certain payments made with premarital funds, we discuss only the facts related to those issues.

During the marriage, Billy was receiving disability benefits from the military and social security payments. Janelle was consistently employed during the marriage and placed money from her paychecks into retirement accounts. Some of these retirement accounts existed prior to the marriage but were rolled over to a new account during the marriage, to which Janelle contributed. She also had various bank accounts, some of which contained a mix of marital and premarital funds.

Prior to the marriage, in June 2007, Billy purchased a home (the Taylor Street property) for approximately $155,000. Neither party offered evidence as to what the value of the home or balance of the mortgage was at the time of marriage in September 2015. In July 2017, approximately 2 years after the parties were married, Janelle paid the remainder of the mortgage, which at the time was $85,400; she testified she used premarital funds to make this payment. In March 2018, the home was retitled in both parties' names. A market analysis showed a current value of $215,000. Billy owned a 2013 Honda Civic, and during the marriage, Janelle paid off the $8,000 that remained on the car loan.

The district court dissolved the parties' marriage and distributed the estate. An attachment to the decree showed the distribution of the parties' assets and liabilities. The district court determined that the home had marital equity of $60,000, which was to be divided evenly between the parties, and it awarded the home to Billy. It found that the $85,400 Janelle used to pay off the mortgage came from Janelle's premarital funds, and it subtracted that amount from the total assets Janelle was awarded. The district court determined the Honda Civic was Billy's premarital property, but credited Janelle with the $8,000 payment she made toward the vehicle, which it found was also premarital, it also subtracted that amount from the total amount of assets it was awarding her. Thus, while Janelle was awarded $207,376.64 in marital assets, the district court subtracted the amounts Janelle paid for the home and car, thereby reflecting marital assets to Janelle of $151,099.71.

The district court determined that an investment bank account Janelle held contained premarital funds, but that Janelle had made contributions during the marriage of $30,000; therefore, the parties should equally divide those contributions. The district court determined that one of Janelle's retirement accounts held premarital funds, but that Janelle had contributed $17,000 to it during the marriage. It determined that there had been growth of $60,000 in that account during the marriage and equally divided that amount.

After calculating the assets and debts awarded to each party, the court ordered Janelle to pay an equalization payment of $21,677.45 to Billy. Janelle appeals.

## ASSIGNMENTS OF ERROR

Janelle assigns that the district court abused its discretion by inconsistently calculating "active appreciation" in investment and retirement accounts and by improperly dividing the marital estate without correct reimbursement to the parties.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Parde v. Parde,* 313 Neb. 779, 986 N.W.2d 504 (2023). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Calculation of Appreciation.*

Janelle assigns that the district court abused its discretion by inconsistently calculating active appreciation in investment and retirement accounts. She takes specific issue with the district court's determination regarding the retirement account discussed above. The district court did not explain its calculations in the decree; rather, it included notations on the property worksheet attached to the decree. As to the retirement account, the court noted this retirement account was "premarital but contributions made to this account and [two other accounts] of at least $17k so court puts marital growth over the course of marriage at $60,000 so [Billy] will receive $30,000 of marital growth (nonmarital $77046.31)."

Regarding the investment bank account, the district court noted "Premarital funds but marital contributions since marriage of $30,000, each would get $15K of martial [sic] contributions (total value $41,692.03, marital $30,000)." Janelle argues that the method used for determining the marital value of the retirement account, when compared to the method used to calculate the marital value of the investment bank account, is incorrect and an abuse of discretion. She asserts "the marital growth of the [retirement account] should be $17,000 and the marital growth of the [investment bank account] should be $30,000." Brief for appellant at 10. We disagree.

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016). Where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate. *Id*. The burden of proof rests with the party claiming that property is nonmarital. *Id.*

Neb. Rev. Stat. § 42–366(8) (Reissue 2016) provides: "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and deferred compensation benefits owned by either party, whether vested or not vested." When applying this statute, the Nebraska Supreme Court has held generally that amounts added to and interest accrued on pension or retirement accounts which have been earned during the marriage are part of the marital estate, but contributions before marriage or after dissolution are not assets of the marital estate. See *Stanosheck v. Jeanette, supra*.

Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves:

(1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property. *Id*. We first note that Billy does not cross-appeal the district court's implicit finding that Janelle met her burden to prove that any of the funds in the accounts were premarital, nor does he challenge the district court's findings as to the amounts that were determined to be premarital. As such, we will not disturb these findings; rather, we address Janelle's argument that the district court erred in calculating the marital growth of her retirement account at $60,000 rather than limiting it to the $17,000 she contributed during the marriage.

Janelle argues the district court's inclusion of the retirement account's growth beyond her contributions was an abuse of discretion because the district court limited the marital value of her investment bank account to her contributions during the marriage and should have done the same for her retirement account. This argument fails to recognize the difference between the two types of accounts and the limited evidence before the court.

The retirement account was an investment account composed of a portfolio of stocks as evidenced by the account statement received into evidence. The district court determined that there was growth beyond Janelle's contributions; however, she presented no evidence that this growth was due solely to inflation, market forces, or guaranteed rate rather than any effort on her part as required by *Stanosheck v. Jeanette, supra*. In fact, Janelle references this growth as "active appreciation" which, according to *Parde v Parde, supra*, is marital property and would therefore be properly included in the marital estate. Absent evidence that the retirement account's appreciation was not caused by the active efforts of either party, the district court properly classified this growth as marital.

The investment bank account, however, was merely an interest-bearing account reflecting an annual percentage yield between .05 percent and .92 percent. The district court implicitly found no growth on this account beyond Janelle's marital contributions; therefore, it limited the marital value to that amount. The district court did not abuse its discretion in doing so. This assignment of error fails.

*Distribution of Marital Estate.*

Janelle assigns that the district court abused its discretion by improperly dividing the marital estate without correct reimbursement to the parties. Specifically, Janelle argues that the district court incorrectly applied the $85,400 credit she was owed for the premarital funds she used to pay the remaining mortgage on the Taylor Street property, and the $8,000 credit she was owed for the premarital funds used to pay Billy's premarital debt on the Honda Civic. As explained above, the district court used these amounts to reduce the amount of total marital assets Janelle was awarded. (Billy argues in his brief that the funds were not premarital; however, he did not cross-appeal the district court's finding to the contrary.) Although Janelle was awarded property valued at $207,376.64, the district court calculated her marital assets at $151,099.71, thereby giving her full credit for the premarital funds she had expended. We find this method proper. See, *Despain v Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015); *Ramsey v. Ramsey*, 29 Neb. App. 688, 958 N.W.2d 447 (2021).

In *Ramsey v. Ramsey, supra*, we explained that setoffs for premarital credits and use of marital funds for premarital debt should have been accounted for in determining the net marital estate *before* calculating the equalization. This is consistent with the approach taken by the Supreme Court in *Despain v. Despain, supra*. The Supreme Court explained that "[a]fter determining the parties' total property, [] the court should have identified and separated the marital assets and nonmarital assets. Then, the court should have subtracted and set aside to [wife] her premarital funds used for the [marital expenses] leaving [the remainder] as the marital assets to be divided between the parties." *Id*. at 42, 858 N.W.2d at 571. That is the procedure the district court used here.

In its distribution, the district court valued the Taylor Street property at $60,000 in marital equity, noting that the purchase price was $155,000, and the current value was $215,000. Although Billy purchased the home 8 years before the marriage and some of the $60,000 in increased market value could have been set off as nonmarital, Billy did not produce evidence of the home's market value and mortgage balance at the time the parties were married. Accordingly, the $60,000 in increased value of the home was properly allocated entirely as a marital asset. The court noted that each party would receive $30,000 and awarded Billy the property. Because Billy was awarded the property, it was unnecessary to give him credit for his premarital equity in the home. However, the district court subtracted $85,400 from the value of marital assets Janelle received to reflect the payment from premarital funds she made toward the mortgage. This was the proper method to determine the net marital estate. See, *Despain v. Despain, supra*; *Ramsey v. Ramsey, supra*.

In the same way, the district court subtracted the premarital funds Janelle had paid toward the Honda Civic from the total amount of marital assets she was awarded. Again, this was the proper method. See *id*. Accordingly, the district court did not abuse its discretion in reimbursing Janelle for her premarital contributions in this manner.

Janelle argues use of the *Ramsey* method was incorrect, because unlike the present case, *Ramsey* did not involve the use of premarital funds to pay the other party's premarital debt. She argues that she should be given credit for these payments *after* the marital estate and equalization payment are calculated, rather than making adjustments in the net marital estate before calculating an equalization. While the situation in *Ramsey* is different than the situation presented in this case, we find that the method employed by the district court gave Janelle full credit for her premarital funds. In *Ramsey*, the court used the same method for crediting the husband's premarital contribution to a marital asset as it did for crediting his marital contribution toward a nonmarital debt. Likewise, in *Despain v. Despain, supra*, the wife used premarital funds to pay a marital debt, and the court used the same method to award the wife her premarital contributions. We find no abuse of discretion in the district court's use of the same method to award Janelle her premarital contributions toward Billy's premarital assets. (We note that the district court classified the Taylor Street property as Billy's premarital asset and neither party assigns error to that classification.) We reject this assigned error.

CONCLUSION

Finding no abuse of discretion in the distribution of the marital estate, we affirm the judgment of the district court.

AFFIRMED.