IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SCHOMMER V. BARRY-SCHOMMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RANDALL J. SCHOMMER, APPELLANT AND CROSS-APPELLEE,

V.

BRENDA D. BARRY-SCHOMMER, APPELLEE AND CROSS-APPELLANT.

Filed December 26, 2024.    No. A-23-961.

Appeal from the District Court for Dawes County: TRAVIS P. O'GORMAN, Judge. Reversed and remanded with directions.

Kyle J. Long, of Simmons Olsen Law Firm, P.C., L.L.O., for appellant.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Randall J. Schommer appeals from the Dawes County District Court's order dissolving the parties' marriage and dividing the parties' marital estate. He contends that the court erred in its valuation of Brenda D. Barry-Schommer's retirement account. Brenda cross-appeals asserting that the court erred in failing to offset Randall's share of the marital estate by $160,000 representing marital funds used to pay off Randall's premarital debt. For the reasons stated herein, we reverse and remand with directions.

## STATEMENT OF FACTS

Randall and Brenda were married in October 2007 and no children were born during their marriage. In November 2021, Randall filed a complaint for dissolution of marriage asserting that the parties' marriage was irretrievably broken and requesting that the court dissolve their marriage,

- 1 -

equitably divide their property and debts, and provide for such other relief as the court deemed just and equitable. In her answer and counterclaim, Brenda requested the same and additionally requested spousal support.

A bench trial was held in August 2023. Because the parties have limited their assigned errors on appeal and cross-appeal to the court's division of the marital estate related to the valuation of Brenda's retirement account and the court's failure to offset $160,000 of Randall's premarital debt that had been paid with marital funds, we limit our recitation of the facts to those issues.

Testimony was adduced from the parties and multiple exhibits were offered and received including the parties' joint property statement, Brenda's paystubs, Brenda's retirement account statements, a trust agreement discussing Randall's obligation to pay $20,000 annually to his siblings for receipt of his half interest in the family ranch, and the parties' bank statements indicating payments made to Randall's siblings to satisfy the debt obligation to his siblings. The relevant details relating to the parties' testimony and the exhibits are set forth more fully in the analysis section of this opinion.

In September 2023, the district court entered a decree of dissolution finding that the parties' marriage was irretrievably broken, dissolving the parties' marriage, and dividing the marital property and debts. As relevant to this appeal, in dividing the parties' retirement accounts the court awarded Randall his Edward Jones account valued at $41,681 and awarded Brenda her Chadron State Retirement account and valued the marital portion of that account at $239,524. The district court summarized the property division as follows:

A. Household Equipment and Furnishings
    Total awarded to Randall; $3,620.00
    Total awarded to Brenda: $6,135.00
B. Bank Accounts
    Total awarded to Randall: $184,006.00
    Total awarded to Brenda: $80,659.00
C. Motor Vehicles
    Total awarded to Randall: $14,500.00
    Total awarded to Brenda: $44,800.00
D. Farm or Business
    Total awarded to Randall; $276,280.00
    Total awarded to Brenda: $21,000.00
E. Real Estate
    Total awarded to Randall: $113,105.00
    Total awarded to Brenda; $133,920.00
F. Life Ins./Retirement
    Total awarded to Randall; $41,681.00
    Total awarded to Brenda: $239,524.00
TOTAL ASSETS OF THE PARTIES: $1,159,230.00
TOTAL ASSETS TO RANDALL: $633,192.00
TOTAL ASSETS TO BRENDA: $526,038.00
Total liabilities to Randall: ($19,134.00)
Total liabilities to Brenda ($0)

NET MARITAL ESTATE: $1,140,096.00
NET TO RANDALL: $614,058.00
NET TO BRENDA: $526,038.00

Randall filed a motion to alter and amend asserting that the property division was inequitable and was inconsistent with the evidence adduced at trial. More specifically, he contested the court's valuation of Brenda's retirement account. The district court denied the motion to alter and amend. Randall has appealed, and Brenda has cross-appealed, from the court's order dissolving their marriage and dividing their marital property.

## ASSIGNMENTS OF ERROR

Randall assigns, restated, that the district court erred in valuing the marital portion of Brenda's retirement account at $239,524 because Brenda failed to adduce evidence of the account's premarital value.

In her cross-appeal, Brenda assigns, restated, that the district court erred in failing to reduce Randall's marital property award by the $160,000 that was used during the parties' marriage to pay off Randall's premarital debt.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). This standard of review applies to the trial court's determinations of alimony and property division. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## ANALYSIS

### RANDALL'S APPEAL

In Randall's sole assignment of error, he claims that the district court erred in valuing the marital portion of Brenda's retirement account at $239,524, rather than its full value at the time of the marital dissolution, $461,588.96. He argues that Brenda had the burden to prove the nonmarital portion of the account, that she failed to do so, and that the court should have included the account's full value in the parties' marital estate.

In a marital dissolution action, the equitable division of property is a three-step process. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. *Id.* The second step is to

value the marital assets and marital liabilities of the parties. *Id.* And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.*

As a general rule, all property accumulated and acquired by either party during the marriage is part of the marital estate, unless it falls within an exception to the general rule. *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019). The burden of proof to show that property is nonmarital remains with the person making the claim. *Id*. As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

Randall's assignment of error relates to step 2 of the 3-step framework. He contends that Brenda was not entitled to any premarital interest in the retirement account because "she ultimately admitted that she did not know the value of the account at the time the parties were married" and therefore failed to satisfy her burden to prove the amount of equity entitled to be set off. Brief for appellant at 11.

Neb. Rev. Stat. § 42-366(8) (Reissue 2016) provides, in relevant part, that: "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and deferred compensation benefits owned by either party, whether vested or not vested." When applying this statute, the Nebraska Supreme Court has held generally that amounts added to and interest accrued on pension or retirement accounts which have been earned during the marriage are part of the marital estate, but contributions before marriage or after dissolution are not assets of the marital estate. *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016).

Here, the parties' joint property statement admitted into evidence during the trial showed that the parties disputed the value of Brenda's Chadron State College Retirement account. Randall valued the retirement account at $461,588, and Brenda valued it at $239,524. During the trial, Brenda testified that she began working at Chadron State College in 1978 and eventually began contributing to a retirement plan at a rate of 6 percent. Brenda testified that the 6 percent was matched by her employer until the employer increased the percentage to 8 percent. Brenda offered, and the court received, an account statement for June 30, 2022, which listed the value of her retirement account at $461,588.96; a July 1 to September 30, 2015, statement indicating the amount of her retirement plan at that time was $248,617.03; and multiple paystubs dating back to 2009. Brenda testified that each year her contribution total was between $3,000 and $5,000 and that she was able to ascertain the balance of the retirement account, to the best of her ability, as of the date of the parties' marriage at a value of $222,064. In calculating the marital portion of her retirement account, Brenda testified that she subtracted her ascertained value of the retirement account at the time of the marriage from the June 2022 value of $461,588 for a total marital value of $239,524. However, she admitted that the retirement account was a mix of marital and nonmarital funds and she could not place a value as to the nonmarital portion of the account. More specifically, on direct examination, when asked about how she ascertained the premarital value of the account, the following colloquy occurred:

> Q You have identified a balance of $222,064. To the best of your ability to ascertain the value of your retirement account at the date of marriage, is that the number that you came up with?

A Must've. I do not know where I came up with the number. I cannot answer that, but I had --

Q Certainly, . . . did you contribute [$]248,617.03 to your retirement between the date of marriage and September 30th, 2022?

A Oh, no.

On cross-examination, when Randall's counsel revisited the issue of the premarital balance of the account, the following colloquy occurred:

Q But . . . you've never produced a statement other than the one from June of 2022 for $461,588 on your retirement account?

A That's the one on June 30th, 2022.

Q Right. And then this morning for the first time we've received Exhibit 83, which was the statement from September 30, 2015.

A Okay. That was as far back as I could go.

Q Okay. And so you do not know what the balance of the retirement account was as of October of 2007?

A No, I do not.

In the court's division of assets, the court awarded Brenda her retirement account at Brenda's calculated value of $239,524.

Here, Randall does not dispute that Brenda had a nonmarital interest in her retirement account at the time of the parties' marriage. Rather, Randall argues that Brenda's evidence was insufficient to show what the nonmarital value was, and without evidence of the value of the nonmarital portion of the account, Brenda was not entitled to an offset for that amount. More specifically, Randall argues that Brenda's testimony along with her account statements and paystubs are insufficient to support the court's offset of Brenda's retirement account by Brenda's ascertained nonmarital portion at $222,064. He asserts that Brenda failed to present any evidence of the value of the account at the time of the marriage and therefore the entire value of the account must be included in the marital estate.

In *Burgardt v. Burgardt*, 304 Neb. 356, 364-66, 934 N.W.2d 488, 495-96 (2019), the Nebraska Supreme Court stated:

A nonmarital interest in property may be established by credible testimony. In *Brozek v. Brozek*, [292 Neb 681, 874 N.W.2d 17 (2016),] we recognized that a spouse's own testimony can establish a "'tracing link,'" i.e., tracking an asset to a nonmarital source. Of course, triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. We acknowledged in Brozek that the trial court was "entitled to discount [the husband's] testimony about [an alleged premarital asset] because of his admitted uncertainty."

While documentary evidence may be more persuasive, it is not absolutely required. In a case where the husband did not produce bank statements proving the premarital

balance of his bank accounts but the wife did not contest the values he listed on a joint property statement, we found an abuse of discretion by the trial court in failing to set off the value of premarital bank accounts. In *Onstot v. Onstot*, [298 Neb. 897, 906 N.W.2d 300 (2018),] we affirmed the trial court's decision to not grant the husband credit for the value of a premarital house at the time of marriage, stating that "assuming [the husband's] testimony established the value of the residence at $100,000 at the time of the marriage, he did not testify or supply any documentation as to whether the residence was either encumbered or unencumbered at that time and, if encumbered, to what extent." This statement implies that premarital equity could have been established by testimony alone. In a case where undisputed testimony established items as premarital, the Court of Appeals determined that the trial court erred in classifying the items as marital property.

Of course, a party opting to rely upon his or her testimony alone does so at the risk of nonpersuasion. In a case where the trial court set aside the total amount of premarital funds that the husband claimed he used to purchase property, we reduced the amount of the set aside—even though the husband's testimony was uncontradicted—because there was nothing in the record to show the source of certain funds. In *Brozek,* we affirmed the trial court's decision declining to set off any amount to the husband for the premarital portion of two checking accounts (he testified one account had about $79,000 at the time of marriage), crops from a 1993 harvest, and machinery owned at the time of marriage (but later sold or traded). A party seeking recognition of nonmarital property may find it easier to meet his or her burden of persuasion with documentary support. But its absence does not automatically defeat the claim.

Here, Brenda did not have a statement that detailed the amount of the retirement account as of the time of the parties' marriage in 2007. But as the Nebraska Supreme Court clarified in *Burgardt*, that is not necessarily fatal to establishing the account's premarital value because a spouse, through testimony, can establish a "tracing link" in establishing value. Brenda argues that she did that here by testifying that the value of the asset at the time of the parties' marriage was $222,064. But when questioned about the methodology on how she arrived at that number, she acknowledged that she had no way of knowing how she reached that number. In fact, she acknowledged that the growth in the asset would include her own contributions, her employer's contributions, and market forces, but never discussed analyzing anything other than her own contributions. The dearth of evidence involved in "tracing" the premarital value is borne out by the limited evidence provided on the subject. For instance, Brenda did provide a statement showing the 2015 value of the account of $248,617, which itself demonstrates that through contributions and market forces the account grew to $461,588 by 2022. Yet Brenda's stated premarital value as of 2007 suggests the account was worth only $26,553 less in 2007 than it was in 2015, which is suggestive that Brenda only reduced the value by her own contributions to the account in calculating its value. But how she computed the value is something we will never know as Brenda acknowledged during her testimony that she had no idea how she ascertained the value of the account.

After reviewing the record, to the extent that Brenda's statement of the value of the account can be considered testimonial evidence of value, we find that Brenda simply failed to satisfy her

burden to establish the premarital value of the account. In short, her failure to provide any methodology as to how she traced the premarital value left the factfinder with only speculative evidence of its premarital value. Because it was Brenda's burden to establish the nonmarital portion of her retirement account, and her testimony regarding how she arrived at an estimate of the nonmarital value of her account was based upon speculation, we find that she failed to meet her burden. Accordingly, based upon our de novo review of the record, we find that the court abused its discretion in valuing the marital portion of Brenda's retirement account at $239,524. We reverse and remand with directions for the district court to value Brenda's retirement account as a marital asset at its full value of $461,588.96 and to recalculate the parties' marital estate.

BRENDA'S CROSS-APPEAL

Brenda assigns that the district court erred in failing to reduce Randall's share of the property division by $160,000, representing the amount of Randall's premarital debt paid during the parties' marriage.

Debts, like property, ought to also be considered in dividing marital property upon dissolution. *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019). When one party's nonmarital debt is repaid with marital funds, the value of the debt repayments ought to reduce that party's property award upon dissolution. *Id*. There is a general principle that any income accumulated during a marriage is a marital asset. *Id.* The burden of proving the amount of the reduction of one party's nonmarital debt during the marriage is on the party claiming the share should be reduced. *Id*.

During the trial, Randall testified that he received a half interest in the family ranch after his father passed away in 2005 and at that time, he incurred an obligation to pay his siblings $200,000 over a 10-year period. As evidence of this obligation, the court received the trust agreement and bank statements showing the yearly installments paid to date. Randall testified that the first two $20,000 payments of the debt were paid prior to the parties' marriage, however, he acknowledged that during the parties' marriage, $160,000 of the promissory note had been paid with marital funds. This value was also included in the parties' joint property statement and the trust agreement, which were both admitted as exhibits during the trial.

Although Randall does not dispute that the $160,000 premarital debt should have been included in the division of the marital estate, he argues that the court considered it in the division of marital property but just did not note a separate credit in its calculation. Randall contends:

> The district court awarded the property and debt specifically to each party but did not order an equalization payment, despite the fact that [Randall] received more than $100,000 more than [Brenda]. Even if the $180,000 [sic] was specifically accounted for in Court's calculation, the result would be that [Randall] would receive only 60.71% of the marital estate. Thus, the distribution of the marital estate was not an abuse of discretion.

Reply brief for appellant and answer on cross-appeal at 9.

Any repayments made with marital funds for Randall's nonmarital debt after the parties' marriage and prior to separation should have resulted in a reduction of Randall's individual share of the property division. See *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019). See, also, *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004) (wife's portion of marital

estate should have been reduced by total debt that she brought into marriage because debt was paid off with marital assets); *Schwensow v. Bartnicki*, 32 Neb. App. 798, 6 N.W.3d 549 (2024) (finding abuse of discretion by not including reduction in wife's premarital student loan debts paid with marital funds in marital estate); *Wiech v. Wiech*, 23 Neb. App. 370, 871 N.W.2d 570 (2015) (remanded to district court to equitably divide marital estate and offset both husband and wife's portion of premarital debt paid with marital funds).

Although in *Gangwish, supra*, the Supreme Court found no abuse of discretion in the court's failure to reduce the wife's share of the marital estate for debt brought into the marriage that was paid off with marital assets where the mistake constituted less than 1 percent of the total marital estate, we cannot reach a similar conclusion here. Here, the value of Randall's premarital debt paid with marital funds constituted nearly 10 percent of the value of the marital estate.

Accordingly, we find that Randall's portion of the marital estate should have been reduced by $160,000 constituting his premarital debt paid with marital funds during the marriage. Because the amount is a significant portion of the marital estate, we find that it was an abuse of discretion to fail to offset this portion from Randall's share of the marital estate. Therefore, we remand to the district court with directions to offset Randall's share of the marital estate by $160,000.

## CONCLUSION

For the reasons stated above, we reverse and remand with directions for the district court to revalue the marital portion of Brenda's retirement account at $461,588.96, to offset Randall's share of the marital estate by $160,000, to recalculate each party's net marital estate and, based upon these modifications, to determine whether a property equalization payment for either party is warranted.

REVERSED AND REMANDED WITH DIRECTIONS.